# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION (AT CINCINNATI)

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually, and as the representatives of a class of similarly-situated persons, | ) ) ) ) Civil Action No.: 1:16-cv-00301-MRB |
| Plaintiffs, | ) Judge: Michael R. Barrett ) ) |
| v. | ) **PLAINTIFF'S MOTION FOR SUMMARY** ) **JUDGMENT ON ITS INDIVIDUAL** |
| IPC, INC d/b/a PLATINUMCODE., and JOHN DOES 1-10, | ) **CLAIM** ) ) |
| Defendants. | ) |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Physicians Healthsource, Inc. respectfully requests that this Court grant summary judgment in its favor on its individual claim.  This Motion is supported by the attached Memorandum and the evidentiary materials incorporated therein.

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC.,
individually and as the representative of a class of
similarly-situated persons

*/s/Matthew E. Stubbs*
Matthew E. Stubbs (0066722)
MONTGOMERY, RENNIE & JONSON
36 E. Seventh Street, Suite 2100
Cincinnati, Ohio  45202
(513) 241-4722
(513) 241-8775 (fax)
Email: mstubbs@mrjlaw.com

1

*/s/Brian J. Wanca*
Brian J. Wanca (pro hac vice)
Ross Good (pro hac vice)
Ryan Kelly (pro hac vice)
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Fax:  847-368-1501
bwanca@andersonwanca.com
rgood@andersonwanca.com
rkelly@andersonwanca.com

*Attorneys for Plaintiff Physicians Healthsource, Inc.*

## MEMORANDUM IN SUPPORT

### I.     STATEMENT OF FACTS

This case arises from an apparent violation of the Telephone Consumer Protection Act ("TCPA"), a federal law that has been in effect for decades.  Under the TCPA, which was modified and renamed the Junk Fax Prevention Act ("JFPA") in 2005, it is "unlawful" to send an unsolicited advertisement to someone's fax machine.[1]  The JFPA provides statutory damages of $500.00 for each violation.[2]

On May 26, 2015, Plaintiff Physician Healthsource, Inc. ("Physicians Healthsource") received a document via its office facsimile machine ("the IPC Fax"[3]) that touted the "better cohesive bandage" of Defendant IPC, Inc. dba PlatinumCode ("IPC").  Physicians Healthsource,

---

[1]      47 U.S.C. § 227(b)(1)(C)("It shall be unlawful for any person . . . to send, to a telephone facsimile machine, an unsolicited advertisement . . . ").

[2]       47 U.S.C. § 227(b)(3)(A)-(C)("A person or entity may . . . recover actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.").

[3]      The IPC Fax is before the Court as Exhibit A to the Complaint.  For the Court's convenience, it is also attached hereto as Exhibit A.

a chiropractic clinic that does not use cohesive bandages, did not give IPC permission to send advertisements to PHI via its office facsimile machine.  Accordingly, Physicians Healthsource brought this action against IPC to recover the statutory damages provided by the JFPA.

## II.     ARGUMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is appropriate here because the undisputed facts point to only one conclusion; *i.e.,* IPC sent an unsolicited advertisement to Physicians Healthsource via facsimile.

### A.     The Junk Fax Prevention Act Prohibits the Sending of Unsolicited Advertisements via Facsimile.

In 1991, Congress passed the Telephone Consumer Protection Act ("TCPA" or "JFPA")[4] to combat fax advertising and other excesses of the telemarketing business.[5]  One practice banned by the JFPA was the sending of unsolicited advertisements via facsimile:

> It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine, unless . . . the unsolicited advertisement is from a sender with an established business relationship with the recipient . . . and the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D).[6]

---

[4]     The Telephone Consumer Protection Act was renamed the "Junk Fax Prevention Act" in 2005.  As there were relatively few changes in the statute, the acronyms "TCPA" and "JFPA" effectively refer to the same statute.

[5]     *See Grady v. Lenders Interactive Serv's.*, 2004-Ohio-4239 (Ct. App.), at ¶ 29 ("Business owners [were] virtually unanimous in their view that they [did] not want their fax lines tied up by advertisers trying to send messages.")(*quoting legislative history of the TCPA)*; 47 U.S.C. § 227(6)("Congress finds that . . . Many consumers are outraged over the proliferation of intrusive, nuisance calls . . . from telemarketers.").

[6]     47 U.S.C. § 227(b)(1)(C).

As such, "[a] violation occurs when a person uses any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."[7]

**B.      The IPC Fax is an "Advertisement" Within the Meaning of the JFPA.**

The JFPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."[8]   In resolving a recent junk fax claim, the Sixth Circuit noted the vagueness of this definition and offered the following clarification:  "An advertisement is any material that promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit."[9]  As to faxes in particular, the Sixth Circuit stated that "[t]o be an ad, the fax must promote goods or services that are for sale, and the sender must have profit as an aim."[10]

There is no question the IPC Fax meets this definition.  The IPC Fax touted IPC's cohesive bandages as "better" than adhesive bandages because they "stick to themselves and not your patients" and are "non-latex", "easy-to-tear", and "bright colored".  The IPC Fax sought contact information from the recipients, inquired as to the recipient's monthly usage of cohesive bandages, and offered a "free sample roll."  Ron Griffith, IPC's Vice President of

---

[7]      *Grady,* 2004-Ohio-4239, at ¶ 20; *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, at 748 (Ohio Ct. Com. Pl.)("The TCPA prohibits the transmittal of fax advertisements without first obtaining the 'prior express invitation or permission' of the recipient.'")(*internal citations omitted).*

[8]      *See* 47 U.S.C. § 227(a)(5).

[9]      *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 222 (6th Cir. 2015).

[10]      *Id.*

Sales and Marketing[11], freely acknowledged that IPC sells cohesive bandages and that the

IPC Fax was an advertisement for these bandages:

> Q.    Does IPC sell cohesive bandages?
>
> A.    Yes.[12]
>
>             *          *          *
>
> Q.    Did IPC sell cohesive bandages in May of 2015?
>
> A.    Yes.[13]
>
>             *          *          *
>
> Q.    Okay. Let me direct your attention to Exhibit 1 [referring to the IPC Fax] again.
>
> A.    Yeah.
>
> Q.    From your perspective, was this an advertisement?
>
> A.    Yes.
>
> Q.    And this was an effort to market cohesive bandages that IPC sold?
>
> A.    Yes.[14]

In summary, the IPC Fax was a straightforward promotion for an IPC product that

plainly constitutes an "advertisement" within the meaning of the JFPA.

**C.    IPC Cannot Establish the EBR or Permission Defenses as a Matter of Law.**

---

[11]    Deposition of Ron Griffith, p. 9 ("Q.  What do you currently do at IPC? A.  I'm the VP of sales and marketing.")  For the Court's convenience, the quoted excerpts from Mr. Griffith's deposition testimony are attached hereto as Exhibit B.  The transcript has been filed separately.

[12]    Deposition of Ron Griffith, p. 20.

[13]    Deposition of Ron Griffith, p. 21.

[14]    Deposition of Ron Griffith, p. 21.

There are two defenses set forth in the JFPA: "prior express invitation or permission"[15] ("the permission defense") and "established business relationship"[16] ("the EBR defense").  IPC cannot prevail on the EBR or permission defense as a matter of law.

### 1.    Physicians Healthsource and IPC Have No Relationship Whatsoever.

The Federal Communications Commission ("FCC") is the public agency responsible for both interpreting[17] and enforcing[18] the JFPA.  Under the *Chevron* rule, the FCC's interpretations of the JFPA are entitled to substantial deference: "the United States Supreme Court instructs us that courts do owe deference to an agency's rulemaking authority . . . . We defer to and agree with the positions of the FCC on these matters [regarding the JFPA]."[19]  The FCC has placed the burden of proving the EBR defense squarely on the senders of facsimile advertisements:

> To ensure that the EBR exemption is not exploited, we conclude
> that an entity that sends a facsimile advertisement on the basis of
> an EBR should be responsible for demonstrating the existence of
> the EBR.  The entity sending the fax is in the best position to have

---

[15]    47 U.S.C. § 227(b)(1)(C), (a)(5)("It shall be unlawful for any person . . . to send, to a telephone facsimile machine, an unsolicited advertisement". . . . 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission").

[16]    47 U.S.C. § 227(b)(1)(C)("It shall be unlawful for any person . . . to send, to a telephone facsimile machine, an unsolicited advertisement, unless . . . the unsolicited advertisement is from a sender with an established business relationship with the recipient").

[17]    47 U.S.C. § 227(b)(2)("The [Federal Communications] Commission shall prescribe regulations to implement the requirements of this [law]").

[18]    *See* GAO-06-425, p. 6 ("FCC is authorized to assess and enforce a 'forfeiture' against those who violate the junk fax provisions – that is, a monetary penalty against the faxer for violating the junk fax rules."); 47 U.S.C.S. § 227(h)("The [Federal Communications] Commission shall submit an annual report to Congress regarding the enforcement during the past year of the provisions of this section relating to sending of unsolicited advertisements to telephone facsimile machines".)

[19]    *Charvat v. Dispatch Consumer Servs.*, 95 Ohio St. 3d 505, 509 (Ohio 2002); *see also Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 637 (6th Cir. 2015)("though Alfoccino questioned the reasoning of the FCC's letter brief and its application to this case, it has not directly challenged the legitimacy of the FCC's definition of sender in § 64.1200(f)(10). Nor is such a challenge likely to be viable because the Hobbs Act confers jurisdiction on Courts of Appeal to review FCC regulations only by direct appeal from the FCC.")

records kept in the usual course of business showing an EBR, such as purchase agreements, sales slips, applications and inquiry records. . . . Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.[20]

`

There is no evidence of any business relationship between Physicians Healthsource and IPC. In its Second Set of Requests for Production of Documents, Physicians Healthsource sought any document that "purports to show that PHI has or had an established business relationship with IPC."[21] IPC responded "that, to the best of its knowledge and belief, it did not send any facsimile or Exhibit A [referring to the IPC Fax] to PHI's fax number" and then produced no responsive documents. In the same set of Requests, PHI sought any documents showing "[a]ny communication or contact between PHI and IPC."[22] Although the case had then been pending for well over a year, IPC responded that "[d]iscovery is continuing. IPC reserves the right to supplement at a later date"[23] – and produced no responsive documents.

Mr. Griffith, IPC's Vice President of Sales of Marketing, testified that he was not aware of any purchases or other transactions between Physicians Healthsource and PHI:

> Q. Mr. Griffith, are you aware of any communications between IPC and Physicians Healthsource or Comprehensive Pain Solutions [an entity that shared the fax number of Physicians Healthsource]?
>
> A. To the best of my knowledge, I'm not.
>
> Q. Are you aware of any purchases that either Physicians Healthsource or Comprehensive Pain Solutions [an entity

---

[20]     71 FR 25967 at 25967.

[21]     *See* Defendant IPC, Inc. d/b/a Platinumcode's Answers to Plaintiff's Second Set of Requests for Production of Documents ("IPC's Response to Document Requests"), Response to Request No. 2. A true and accurate copy of IPC's Response to Document Requests is attached hereto as Exhibit C.

[22]     IPC's Response to Document Requests, Response to Request No. 2.

[23]     IPC's Response to Document Requests, Response to Request No. 3.

that shared the fax number of Physicians Healthsource] has made of any products of IPC?

A.      Again, to the best of my knowledge, I'm not, but I'm --- we're still, you know, reviewing things.

Q.      Okay.

A.      But to the best of my knowledge.[24]

Q.      Have you looked -- has IPC looked to see if PHI or Comprehensive Pain Solutions has bought anything from IPC?

A.      Yes, in our recent databases.[25]

By the time of Mr. Griffith's deposition, the case had been pending for over a year-and-a-half. If IPC had not found any records of transactions or even communications between IPC and Physicians Healthsource by then, it is because they do not exist.

The lack of any contact between IPC and Physicians Healthsource is no surprise as IPC did not direct the IPC Fax to existing customers. Instead, as explained by Mr. Griffith, IPC obtained the fax numbers for the IPC Fax campaign from a publicly-maintained database of medical providers:

Q.      Okay. Let me make sure I understand what you're describing for me. So in -- as you were contemplating sending this particular document, Exhibit 1 [referring to the IPC Fax], to people via their fax machines or fax numbers, you recognized that IPC has fax numbers for customers or potential customers in its own various systems going years back?

A.      Correct.

Q.      But those fax numbers have never been harvested out into a single system that would be particularly usable?

---

[24]      Deposition of Ron Griffith, pp. 87-88.

[25]      Deposition of Ron Griffith, pp. 87-88.

A.      That's right.

Q.      So instead of trying to collect all those fax numbers from all of those different systems, you just went to this database, which I think you referred to as the CMS or CLIA database?

A.      CMS database, and CLIA is C-L-I-A, is the laboratory side of it.

Q.      Okay. And you got fax numbers for potential customers, or at least the targets for this particular ad campaign, from those databases?

A.      Yes.[26]

                        *               *               *

Q.      Okay. And I think I know the answer to this question already, but I'll ask anyway.  The fax number for . . . Physicians Healthsource didn't get on the list of persons to whom Exhibit 1 would be faxed because its fax number was in some record that IPC already had, it came from the CMS database?

A.      That's right.[27]

                        *               *               *

Q.      Does IPC typically access this database to acquire contact information like that for its marketing efforts?

A.      Yes, for direct mail purposes and telesales purposes, yes.

Q.      So it wasn't unusual for you, as the Vice President of Sales at IPC, to access this CMS database to get contact information for potential customers and sales?

A.      No. [28]

---

[26]     Deposition of Ron Griffith, pp. 28-29.

[27]     Deposition of Ron Griffith, p. 88.

[28]     Deposition of Ron Griffith, p. 34.

9

In short, the EBR defense requires that the sender of a facsimile advertisement have an "established business relationship" with the recipient.  There is no evidence of any relationship between Physicians Healthsource and IPC whatsoever.  Instead, the undisputed evidence shows that PHI's fax number was one of thousands of fax numbers that IPC gathered from a database of medical providers for marketing purposes.  Accordingly, IPC cannot establish the EBR defense as a matter of law.[29]

### 2. IPC Never Attempted to Get Permission from Physicians Healthsource for its Facsimile Advertisements.

IPC also cannot establish the permission defense as a matter of law as it has no evidence of such permission.  As with the EBR defense, the burden of establishing "prior express invitation or permission" falls squarely on the senders:

> Senders that claim their facsimile advertisements are delivered based on the recipient's prior express permission must be prepared to provide clear and convincing evidence of the existence of such permission. . . . In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given. We strongly suggest that senders take steps to promptly document that they received such permission.[30]

---

[29]    The EBR defense also has two other elements.  First, "the sender [must have] obtained the number of the telephone facsimile machine through . . . the voluntary communication of such number . . . from the recipient of the unsolicited advertisement, or . . . a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number."  47 U.S.C. § 227(b)(1)(C)(ii).  Second, the "unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)."  47 U.S.C. § 227(b)(1)(C)(iii); *see also Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 561 (C.D. Cal. 2012)("The [JFPA] therefore unambiguously requires a compliant opt-out notice on an unsolicited fax, notwithstanding the existence of an established business relationship."); 73 Fed. Reg. 64556 at 64556, ¶ 3 ("The Junk Fax Prevention Act also requires that all unsolicited facsimile advertisements include an opt-out notice that instructs recipients on how to notify senders that they do not wish to receive future facsimile advertisements.")  Because there is no business relationship between Physicians Healthsource and IPC, Physicians Healthsource omits any discussion of the second and third elements of the EBR defense.

[30]    71 FR 25967 at 25971-25972; *see also Spine & Sports Chiropractic, Inc. v. Zirmed, Inc.*, 2014 U.S. Dist. LEXIS 88562, at *65 n.22 (W.D. Ky. 2014)("The Court notes that . . . the burden is on Zirmed [the defendant] to establish the "permission" defense . . . . Zirmed has produced no evidence with which to meet this burden."); *Jemiola v. XYZ Corp.*, 802 N.E.2d 745, 748 (Ohio Ct. C.P. 2003)("An advertiser has the burden of proof with regard to the issue of 'prior express invitation or permission.'")

While "express permission" can be obtained orally, some verification is necessary to meet the clear-and-convincing standard:

> Prior express invitation or permission may be given by oral or written means, including electronic methods. . . . The Commission is concerned that permission not provided in writing may result in some senders erroneously claiming they had the recipient's permission to send facsimile advertisements. . . . Senders who choose to obtain permission orally are expected to take reasonable steps to ensure that such permission can be verified. . . . An example of such documentation could be the recording of the oral authorization.[31]

IPC has produced no "documents that purport to show that IPC obtained express invitation or permission from PHI to send advertisements to PHI's fax machine/fax number."[32]  At the time the IPC Fax was sent, IPC was not even aware of the JFPA and, therefore, its statutory requirement to obtain permission from recipients before sending ads to their fax machines:

> Q.  Okay. Let me ask you some – some general questions. At the time that Exhibit 1, the IPC fax, was sent in May of 2015, you were not aware of the TCPA or the JFPA, correct?
>
> A.  Correct.[33]
>
> *            *            *
>
> Q.  And to your knowledge, no one at IPC was aware of the Junk Fax Prevention Act or the Telephone Consumer Protection Act in May of 2015, correct?
>
> A.  Correct.

---

[31]  71 FR 25967 at 25972.

[32]  IPC's Response to Document Requests, Response to Request No. 1.  As with the Request seeking any documents in support of the EBR defense, IPC responded that "[d]iscovery is continuing.  IPC reserves the right to supplement this response at a later date."  No documents were produced, and the response has not been supplemented.

[33]  Deposition of Ron Griffith, pp. 53-54.

> Q.    So IPC would not have been instructing anyone to get permission to send them ads to their fax machines to comply with either of those laws?
>
> MS. REGAN:    Objection to the extent it calls for legal conclusion. Go ahead.
>
> A.    We wouldn't have been instructing them.
>
> Q.    Because IPC didn't know about those laws?
>
> A.    Correct.[34]

Finally, Mr. Griffith was aware of no communications between Physicians Healthsource and IPC whatsoever:

> Q.    Mr. Griffith, are you aware of any communications between IPC and Physicians Healthsource or Comprehensive Pain Solutions [an entity that shared the fax number of Physicians Healthsource]?
>
> A.    To the best of my knowledge, I'm not.[35]

In summary, proving the recipient has given the sender "prior, express invitation or permission" for facsimile advertisements in compliance with the JFPA is no small matter. The burden of proof is on the sender; the standard of proof is clear-and-convincing evidence; and the proof must be in writing or otherwise verifiable.[36]  In this case, IPC was not even aware of the Junk Fax Prevention Act when the IPC Fax was sent, made no effort to comply with the specific requirements of this law, and has no records of any communications with

---

[34]    Deposition of Ron Griffith, p. 92.

[35]    Deposition of Ron Griffith, pp. 87-88.

[36]    71 FR 25967 at 25971-25972 ("Senders that claim their facsimile advertisements are delivered based on the recipient's prior express permission must be prepared to provide clear and convincing evidence of the existence of such permission. . . . Senders who choose to obtain permission orally are expected to take reasonable steps to ensure that such permission can be verified.  In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given.  We strongly suggest that senders take steps to promptly document that they received such permission.")

Physicians Healthsource whatsoever.  Accordingly, it cannot establish the permission defense as to PHI as a matter of law.

<b>C.</b> <b><u>Physicians Healthsource is Entitled to $500 in Statutory Damages for the IPC Fax.</u></b>

The JFPA allows private rights of action and provides statutory damages of $500.00 for each violation:

> Private right of action.  A person or entity may . . . bring . . . an action to recover actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.[37]

As demonstrated above, the IPC Fax was an "advertisement" within the meaning of the JFPA and was sent to Physician Healthsource via its fax number/fax machine.  Because IPC did not obtain Physician Healthsource's "prior express invitation or permission" for facsimile advertisements, the IPC Fax violated the JFPA.  Accordingly, Physician Healthsource is entitled to a judgment in its favor and against IPC in the amount of $500.00 and costs.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff Physician Healthsource, Inc. respectfully request that this Court grant summary judgment in its favor and against Defendant IPC for $500.00 and costs on its individual claim for the violation of the Junk Fax Prevention Act.

---

[37] 47 U.S.C. § 227(b)(3)(A)-(C); *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)("The statute provides a $500 penalty for the annoyance.  Even a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss; the value of the time necessary to realize that the inbox has been cluttered by junk.")(*internal citation omitted, emphasis in original*); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods.*, 757 F.3d 540, 544 (6th Cir. 2014)("Congress was generally concerned with the costs associated with unsolicited fax advertisements.  But unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce.")(*internal citations omitted);*

13

Respectfully submitted,


/s/Matthew E. Stubbs
Matthew E. Stubbs (0066722)
MONTGOMERY, RENNIE & JONSON
36 E. Seventh Street, Suite 2100
Cincinnati, Ohio  45202
(513) 241-4722
(513) 241-8775 (fax)
Email: mstubbs@mrjlaw.com

/s/Brian J. Wanca
Brian J. Wanca (pro hac vice)
Ross Good (pro hac vice)
Ryan Kelly (pro hac vice)
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Fax:  847-368-1501
bwanca@andersonwanca.com
rgood@andersonwanca.com
rkelly@andersonwanca.com

*Attorneys for Plaintiff Physicians Healthsource, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on, March 27, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.


/s/ *Matthew E. Stubbs*
Matthew E. Stubbs

14