**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually and on behalf of all others similarly situated, | ) ) ) |
| | ) Case No. 1:16-cv-00301 |
| Plaintiff, | ) |
| | ) Hon. Judge Michael R. Barrett |
| v. | ) |
| | ) |
| IPC, INC., d/b/a Platinum Code, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT IPC, INC.'S COUNTER-MOTION TO DISMISS FOR LACK OF**
**SUBJECT MATTER JURISDICTION AND OPPOSITION IN RESPONSE TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS INDIVIDUAL CLAIM**

Defendant IPC, Inc., d/b/a PlatinumCode, respectfully moves this Court to dismiss this action under Rule 12, or alternatively Rule 56, of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). This Motion is supported by the attached Memorandum (specifically, the Statement of Undisputed Material Facts and Section III of the Memorandum) and the declarations, exhibits, testimony, and discovery answers and responses cited and attached hereto.

The attached Memorandum and supporting materials also oppose Plaintiff's Motion for Summary Judgment on its Individual Claim (Doc. 41) on the grounds that 1) a Named Plaintiff and proposed class representative may not seek a judgment on the merits prior to a certification decision under Rule 23(b)(3)-(c) of the Federal Rules, and 2) Named Plaintiff has no private right of action under the Telephone Consumer Protection Act ("TCPA").

DATED: April 17, 2018            **HELLMUTH & JOHNSON, PLLC**

By:     /s/ *Wilbert Farrell*                        

Wilbert Victor Farrell IV (OH ID# 0088552)
Trial Attorney
8050 West 78th Street
Edina, MN 55439
Telephone: 952-941-4005
Fax: 952-941-2337
wfarrell@hjlawfirm.com

By:     /s/ *Anne T. Regan*                      
Anne T. Regan (Admitted *Pro Hac Vice*)
(MN ID # 0333852)
Karen L. Helgeson (Admitted *Pro Hac Vice*)
(MN ID # 0387796)
8050 West 78th Street
Edina, MN 55439
Telephone: 952-941-4005
Fax: 952-941-2337
wfarrell@hjlawfirm.com
aregan@hjlawfirm.com
khelgeson@hjlawfirm.com

**ATTORNEYS FOR DEFENDANT IPC, INC.
dba PLATINUMCODE**

## Table of Contents

**Table of Authorities** …………………………………………………………….. ii

**Introduction** …………………………………………………………………... 1

    **Statement of Material Undisputed Facts** ……………………………………… 2

        I.    PHI ………………………………………………………………… 2

        II.   IPC ………………………………………………………… 4

    **Background to the TCPA** ……………………………………………… 8

    **Legal Standard** ……………………………………………………… 9

    **Argument** ……………………………………………………… 10

        I.    Plaintiff's Motion is Barred by the One-Way Intervention Doctrine …….. 10

        II.   The Court Must Deny Plaintiff's Motion Because Plaintiff Does Not Have a Private Right of Action Under the TCPA …………………………. 12

        III.  PHI Lacks Article III Standing ………………………………………… 14

**Conclusion** ……………………………………………………………… 17

i

# Table of Authorities

## Cases

*Alongi v. Ford Motor Co.,*
386 F.3d 716 (6th Cir. 2004) ...................................................................................................10

*Am. Civil Liberties Union v. Nat'l Sec. Agency,*
493 F.3d 644 (6th Cir. 2007) ...................................................................................................12

*Am. Pipe & Const. Co. v. Utah,*
414 U.S. 538 (1974) ...................................................................................................................10

*Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,*
193 F.3d 415 (6th Cir. 1999) ..........................................................................................10, 11

*Bridgeview Health Care Ctr., Ltd. v. Clark,*
816 F.3d 935 (7th Cir. 2016) .....................................................................................................9

*Cartwright v. Garner,*
751 F.3d 752 (6th Cir. 2014) ...................................................................................................10

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...................................................................................................................14

*Corum v. Fifth Third Bank of Kentucky, Inc.,*
No. 3:99-268, 2004 WL 594996 (W.D. Ky. Mar. 3, 2004) ...............................................12

*Costello v. BeavEx, Inc.,*
810 F.3d 1045 (7th Cir. 2016) .................................................................................................11

*Creative Montessori Learning Centers v. Ashford Gear LLC,*
662 F.3d 913 (7th Cir. 2011) .....................................................................................................9

*Eversole v. EMC Mortg. Corp.,*
No. 05-124, 2007 WL 1558512 (E.D. Ky. May 29, 2007) ................................................11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ...................................................................................................................14

*Gooch v. Life Inv'rs Ins. Co. of Am.,*
672 F.3d 402 (6th Cir. 2012) ...................................................................................................10

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.,*
792 F.3d 627 (6th Cir. 2015) ...................................................................................................16

*In re Lewis,*
398 F.3d 735 (6th Cir. 2005) ...................................................................................................10

*Kopff v. World Research Grp., LLC,*
  568 F. Supp. 2d 39 (D.D.C. 2008) ........................................................................13

*Leyse v. Bank of Am.,*
  No. 09-7654, 2010 WL 2382400 (S.D.N.Y. 2010) .................................... 13, 14

*Leyse v. Clear Channel Broad., Inc.,*
  545 F. App'x 444 (6th Cir. 2013) ...................................................................13

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .......................................................................... 10, 14

*Ogle v. Church of God,*
  153 F. App'x 371 (6th Cir. 2005) .......................................................................9

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.,*
  254 F. Supp. 3d 1007 (N.D. Ill. 2017) ...............................................................2

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC,*
  No. 12-22330-CIV, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014) ........................... 2, 3, 4, 5

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.,*
  863 F.3d 460 (6th Cir. 2017) .................................................................. 12, 13

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.,*
  No. 13-2085, 2015 WL 12766497 (N.D. Ohio Sept. 4, 2015) ...............................17

*Soehnlen v. Fleet Owners Ins. Fund,*
  844 F.3d 576 (6th Cir. 2016) ...........................................................................15

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) .......................................................................... 15, 17

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ...........................................................................................12

*Stoops v. Wells Fargo Bank, N.A.,*
  197 F. Supp. 3d 782 (W.D. Pa. 2016) ...............................................................16

*Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.,*
  235 F. Supp. 3d 882 (S.D. Ohio 2017) .......................................................... 16, 17

*United States v. Ritchie,*
  15 F.3d 592 (6th Cir. 1994) .............................................................................10

*US Fax Law Ctr., Inc. v. iHire, Inc.,*
  476 F.3d 1112 (10th Cir. 2007) .......................................................................15

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................15

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000)................................................................................11

**Statutes**

47 U.S.C. § 227(a)(5).................................................................................................8

47 U.S.C. § 227(b).........................................................................................9, 10, 15

**Introduction**

The undisputed material facts establish that Defendant IPC, Inc. ("IPC") did not attempt to send Plaintiff Physicians Healthsource ("PHI" or Plaintiff) a fax on May 26, 2015. Instead, IPC's records establish the fax was intended for, and sent to, PHI's tenant. Not only was the fax not directed to PHI, as of May 26, 2015, PHI neither used the *fax number* nor the *fax machine* to which the fax was sent. PHI's interception of the fax fails to provide it with a right of action under the Junk Fax Prevention Act of 2005 ("JFPA") at all.

PHI cannot derive standing from its tenant under Article III, because that tenant compensated PHI for the use of the fax line, fax machine, and the de minimis costs associated with printing the fax. For this reason, Defendant IPC, Inc. ("IPC") has concurrently moved for dismissal for lack of subject matter jurisdiction. Because PHI was reimbursed by its tenant for the use of the fax machine, associated phone line, and any fax supplies, it cannot claim injury to itself as a result of its tenants' receipt of faxes or any other use of the fax machine. PHI was in fact paid for all uses of the fax machine, whether it deemed certain faxes "junk" and others "legitimate."

PHI's motion for summary judgment must also be denied for an additional, fundamental reason: A proposed class representative cannot seek judgment on the merits before moving for class certification. The one-way intervention rule bars this attempt. Accordingly, the Court cannot rule on PHI's motion until it has assured itself that the Court both has subject matter jurisdiction over this case and that a class may be certified. *See* Fed. R. Civ. P. 23(c)(1),(b)(3). Because the Court does not have subject matter jurisdiction over Plaintiff's claim, the Court must dismiss Plaintiff's Complaint.

## Statement of Material Undisputed Facts

**I.      PHI**

Plaintiff PHI has been a named plaintiff in upwards of thirty putative class actions brought under the JFPA since 2012. Garrigan Dep. Ex. 4; Ruch Dep. at 29:16–21.[1] This litigation activity has caused courts to label it a "professional class action plaintiff." *See, e.g., Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1012 (N.D. Ill. 2017), *reconsideration denied*, No. 12-3233, 2017 WL 4682734 (N.D. Ill. Oct. 18, 2017) (quoting *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, at *7 (S.D. Fla. Dec. 24, 2014) and finding plaintiff and its counsel to be inadequate under Rule 23(a)(4)). In this case, Plaintiff alleges IPC sent a facsimile to Plaintiff on May 26, 2015, and that Plaintiff received that fax "via its office facsimile machine." Doc. 1, Compl. ¶ 13. Plaintiff asserts claims for statutory damages and injunctive relief on behalf of itself and a putative class consisting of everyone who was sent the fax. Compl. ¶ 5.[2]

Plaintiff is a chiropractic physician's office prohibited by a 2011 Ohio law from employing medical physicians. Ruch Dep. 32:25-33:25. Through a related entity owned by Plaintiff's principals, Drs. Ruch and Elwert ("PHS Capital"), Plaintiff has leased space to two separate medical practices within PHI's building, which are owned and operated by medical physicians. Ruch Dep. 36:1–37:11; 40:6–41:1; 43:18–44:3. One of those practices was Comprehensive Spine & Pain Rehabilitation, formerly known as Comprehensive Pain Solutions, LLC ("CSPR/CPS"). *Id.*; *see also* Ex. A (Ohio Secretary of State filings). CSPR/CPS was a tenant between 2011 and 2015. Ex. D, Management

---

[1] The depositions and exhibits of Terrence Garrigan (PHI's designated Rule 30(b)(6) witness) and Dr. John Ruch have been filed with the Court contemporaneously. The deposition of Ron Griffith has been filed with the Court at docket number 43.

[2] Plaintiff's corporate designee admitted at deposition that Plaintiff had no factual basis for asserting claims for injunctive relief at the time the Complaint was filed. Garrigan Dep. at 23:5–25:10.

Agreement [filed under seal]; Ruch Dep. 36:1–37:11; 40:6–41:1; 43:18–44:3.[3] A "Management Agreement" dated February 1, 2012 provides that "Comprehensive Pain Solutions" will be granted "exclusive use" of leased equipment during regular business hours, in return for a substantial monthly payment. *Id.* The leased equipment includes "[m]iscellaneous medical office equipment, furniture, telephones, etc." as well as the "[s]upplies for the above mentioned equipment." *Id.* at Exhibit B, Equipment Lease.

Plaintiff has used two fax numbers since its incorporation in 1999: 513-347-2735 and 513-922-2009. Ruch Dep. 42:23–44:3; Garrigan Dep. 28:2–29:23. Since 2015, it has primarily used 513-347-2735 as its fax number. Ruch Dep.; Ex. 42:23–44:3, Ruch Dep. Ex. 2. Conversely, PHI's tenants, CSPR/CPS and Pain Specialists of Cincinnati, use and publish only fax number 513-922-2009. Ruch Dep. 54:22–55:20.

Notably, since 2015, PHI has not shared any office equipment or the fax number with its tenants, CSPR/CPS or Pain Specialists of Cincinnati. Ruch Dep. 43:19-25; 56:22-57:10. In 2015, CSPR/CPS, not PHI, customarily used the fax number (513-922-2009) that received the fax at issue in this case:

> Q.    So with respect to [513-229-2009] in 2015, was [] PHI using that number?
> A.    That would have been Comprehensive Spine Pain.

Ruch Dep. at 43:19–25. Dr. Ruch also testified that the fax machine that printed the fax was used by CSPR/CPS:

> Q.    Did [PHI and CSPR/CPS] share copiers or did you split that off in 2015?
> A.    In '15, we did not share copiers, because, again, both offices were functioning as separate entities, separate units, both had their own staff. We just -- again, we're under the same roof and could walk down the hall and meet with each other.

---

[3] Another entity, which later displaced CSPR, was Pain Specialists of Cincinnati. Ruch Dep. 40:6–41:1; 43:18–44:3; 12:16–13:1.

> Q. And did you share any equipment, other than like a copy room or anything like that?
> A. No.
> Q. So you didn't even share the fax machine in 2015?
> A. No.

Ruch Dep. at 56:22–57:10.

Since around 2004, a PHI employee, Kathy Curtis, has separated incoming faxes for distribution. Ruch Dep. 27:1–15, 48:9–16; Garrigan Dep. 18:22–19:10. One pile is physician- or patient-related faxes that are distributed internally, and which may include communications from insurance companies, attorneys, vendors, or the like. Ruch Dep. 27:1–15; Garrigan Dep. 20:8–18. Another pile is anything else and is presumptively deemed "junk." Garrigan Dep. 20:8–22. Curtis collects and sends these faxes in this second pile to Cincinnati attorney John Lowry. Garrigan Dep. 20:23–21:7. Lowry then reviews them and counsels PHI whether to file a lawsuit under the JFPA. *Id.*; Ruch Dep. 27:19–28:14. PHI has never used opt-out procedures provided on faxes, even where provided by senders like IPC, and instead has determined to file suit in federal and state courts across the country for faxes it deems "junk." Garrigan Dep. 21:8–24; Ruch Dep. 72:2–15.

In 2015, PHI was not using the 513-922-2009 facsimile number or the fax machine to which the fax at issue in this case was sent. Ruch Dep. 43:20–23; 57:6–9. Instead, CSPR/CPS and Pain Specialists of Cincinnati, which leased equipment and space from Plaintiff, were using that fax number and machine. Ruch Dep. 37:5–19; 43:20–23; 57:6–9. Despite the fact that PHI no longer uses the fax machine or the 513-922-2009 fax number, it still collects faxes received at this number and sends them to Lowry. Ruch Dep. 58:20–59:7.

## II.     IPC

IPC is a distributor of innovative healthcare products, including sterile labels, cohesive bandages, exam gloves, and wristbands. M. Griffith Decl ¶ 7. IPC also manufactures some of the products it sells. (*Id.*). Since its humble beginnings in the basement of the Griffith family home in

4

Pembina, North Dakota, approximately 25 years ago, IPC has experienced consistent but modest growth. *Id.* ¶¶ 1, 4–5. It remains a family-run business with 44 employees. *Id.* ¶¶ 5, 9. Since 2013, IPC has done business as Platinum Code. *Id.* ¶ 2.

IPC markets directly to healthcare facilities, chiefly clinical laboratories, through its sales and marketing team. R. Griffith Decl. ¶ 2. The team includes employees who attend trade shows and healthcare industry events. R. Griffith Decl. ¶ 3. Team employees also call existing and potential customers directly, or draft and send written marketing communications by direct mail, email, or fax. *Id.*. In the course of their communications with existing and potential customers, IPC's sales employees would obtain a fax number, among other contact information, and explain that by giving the fax number, the existing or potential customer agrees to receive all manner of communication by fax, including marketing material. *Id.* ¶ 4; R. Griffith Dep. 54:20–25, 63:10–18, 64:3–13, Doc. 43 at PageIDs 502, 511, 512.  As a matter of good business practice, from the inception of the relationship, IPC would ask its contacts for their fax numbers, and let them know they were agreeing to receive fax communications from IPC, including advertisements:

> Q. And did you ever explain to people, by giving us your fax number, you're agreeing -- you're giving us permission to send you ads via your fax machine?
>
> A. Yes. I would have -- not as a standard practice for [every sales contact], but I would have done that, yes.
>
> * * *
>
> Q. And do you think that's also true with respect to the other telemarketing calls?
>
> A. Yes.
>
> Q. And just so I'm clear, they may have said to people, by giving me your – by giving IPC your fax number, you're agreeing to receive advertisements by us via facsimile. They may have had that communication with people?
>
> A. Absolutely, yes.

Griffith Dep. 63:12-64:9, Doc. 43 at PageID 511–12.[4]

One of IPC's methods for obtaining and retaining customers is to offer free samples of its products. R. Griffith Decl. ¶ 12. In accordance with that practice, in late May 2015, IPC decided to send a fax to provide its customers the opportunity to receive a free sample of a cohesive bandage. R. Griffith Decl. ¶ 11–12; R. Griffith Dep. 19:17–20:1, Doc. 43 at PageID 467–68.[5]

Contrary to Plaintiff's contention, IPC only intended to send the May 26, 2015 fax to customers who wanted to receive marketing and other communications by fax, and who would use a cohesive bandage product. R. Griffith Decl. ¶ 16; R. Griffith Dep. 54:15-25, Doc. 43 at PageID 502. But IPC had no central electronic repository of fax numbers for its customers—being a small, family-run company operating on a limited budget, it had only recently begun using an electronic client relations database and many fax numbers were stored in thousands of paper records. R. Griffith Decl. ¶ 13; Griffith Dep. at 64:14–71:23, Doc. 43 at PageID 512–19. So IPC turned to a

---

[4] PHI has misleadingly cited Griffith's testimony out of context for the proposition that no sales representative obtained permission to send faxed advertisements. Doc. 41, at PageIDs 418-419. It is clear from Griffith's testimony that IPC did, in fact, seek its prospective and existing customer's consent to receive marketing materials via fax, because it was good business practice, not because the JFPA required it.

A. … -- I think your prior question was did we instruct people to do that. Not necessarily. We didn't instruct our employees to do that, but --

Q. Okay. Why would they do it?

A. -- we would've done that.

Q. Why would they do it then?

A. Well, I guess if you're a sales rep and you're wanting to know if you can communicate with the, you know, with these cust -- with these customers, or whoever it is, your prospects, you would want to make sure you -- that you don't want to --you don't want to send them something that's doesn't -- that they don't want.

Griffith Dep. at 56:19-57:18, Doc. 43 at PageID 504–05.

[5] The healthcare industry still relies heavily on fax machines to send information. Ruch Dep. 57:11–14; *see also* A. Rege, "Why the US health system still prioritizes fax machines: 7 things to know," Oct. 30, 2017 *available at* https://www.beckershospitalreview.com/healthcare-information-technology/why-the-us-health-system-still-prioritizes-fax-machines-7-things-to-know.html (last checked April 16, 2018).

public source to download that contact information. *Id.* at ¶ 14; *see also* Ex. D, Second Suppl.

Answers to Plf.'s First Set of Interrogatories, at pp. 17–19. As explained by Ron Griffith, IPC's Vice

President and head of Sales & Marketing, in compiling the fax recipient list:

> I reviewed our current records which included thousands and thousands of
> paper records… a lot of our customer records are in paper. We also had
> electronic records. When I reviewed that, I could see it was not possible to
> automate the compilation of all those fax numbers from our -- because of
> the thousands of paper records. And even if I were to be able to do that
> somehow, I knew that they would be incomplete because over the years,
> span of years from the '90s and forward, we've used all sorts of different
> methods of recording our customer data, everything from notebooks to
> date planners to rolodex to custom forms, custom folders, various
> electronic record systems. And a lot of those, as we migrated from one to
> another, we, you know, they wouldn't fully migrate, we would lose
> especially on the paper ones, we'd lose that data as we disposed of them. So
> considering all those things, I compiled the numbers from the [publicly
> available Center for Medicare & Medicaid Service] CLIA data and matched
> those, you know, a bunch of them at random to make sure that they
> matched and mirrored our customer list, which they did.

Griffith Dep. at 27:20-28:20, 32:11-33:4, Doc. 43 at PageIDs 477–78, 80–81; *see also* Ex. D, Second

Suppl. Answers to Plaintiff's First Set of Interrogatories, at pp. 17–19.

Accordingly, to create the fax list, Griffith searched the publicly available National Provider

Identifier Standard (NPI) registry housed in and maintained by CMS. R. Griffith Decl. ¶ 14; Ex. D,

Second Suppl. Answers to Plaintiff's First Set of Interrogatories, at pp. 17–19.[6] Griffith developed

the list of recipients by searching for providers with certain criteria, because he believed those

criteria accurately reflected IPC's existing customer base. Griffith Decl. ¶ 14; Ex. D, Second Suppl.

Answers to Plaintiff's First Set of Interrogatories, at pp. 17–19.

---

[6] Providers may choose to consent to the public dissemination of certain information, including their
facsimile number, i.e., provision of a facsimile number is optional. This information is self-reported by the
provider to the government in accordance with the Clinical Laboratory Improvement Amendments of 1988
(CLIA) regulations. R. Griffith Decl. ¶ 14; *see also* Griffith Dep. 32:11-33:4, Doc. 43 at PageIDs 480–81.

Plaintiff's contact information and fax number was not contained in the list generated by Griffith's search. Griffith Dep. Ex. 11, Doc. 46, Part I, at 27–28 of 30. Thus, IPC did not send the fax to Physician's Healthsource. *Id.*. Instead, to its knowledge IPC sent the fax to CSPR/CPS at fax number 513-922-2009. *Id.*. Plaintiff's principal, Dr. John Ruch, agreed at deposition that PHI was not one of the listed recipients. Ruch Dep. 9:6–10:2. Ruch further agreed that he could not identify any entry on the fax reception journal for May 26, 2015, corresponding to Exhibit A of Plaintiff's Complaint, meaning the fax reception journal Plaintiff produced does not show receipt of the fax attached as Exhibit A to Plaintiff's Complaint. Ruch Dep. 68:11–69:16 ("I can't exactly tell which one of these is that fax or any others"); 69:18–22.

### Background to the TCPA

The Telephone Consumer Protection Act ("TCPA"), as amended by the JFPA, imposes on any sender of an unsolicited fax advertisement statutory damages of at least $500 per fax. 47 U.S.C. § 227(b)(1)(C), (b)(3). "An unsolicited advertisement" is defined as "material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

The statute creates an exception for senders "with an established business relationship with the recipient," 47 U.S.C. § 227(b)(1)(C)(i), as long as the fax number for the recipient was obtained prior to July 9, 2005, or is obtained through approved means, or, *id.* at § 227(b)(1)(C)(ii), and the fax contains an opt-out notice. *Id.* at §§ 227(b)(1)(C)(iii) & 227(b)(2)(D); *see also* 47 C.F.R. § 64.1200(a)(4)(i)–(iii). The JFPA does not, however, impose liability for faxes which are solicited, i.e., faxes to recipients who granted prior express invitation or permission to receive faxes. 47 U.S.C. § 227(b)(1)(C)(iii).

Congress enacted the TCPA and JFPA to protect consumers from unwanted robocalls and unrelenting facsimile transmissions. Courts have noted, however, that the TCPA "imposes potentially very heavy penalties on its violators—many of whom, quite possibly including tiny [defendant], have never heard of this obscure statute." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 915–16 (7th Cir. 2011). In recent years courts have expressed serious reservation about JFPA/TCPA cases brought by repeat litigants who seemingly manufacture TCPA claims, including cases brought by Plaintiff or its counsel. "We doubt that Congress intended the TCPA, which it crafted as a consumer-protection law, to become the means of targeting small businesses. Yet in practice, the TCPA is nailing the little guy, while plaintiffs' attorneys take a big cut." *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 941 (7th Cir. 2016).

### Legal Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." Fed. R. Civ. P. 56(c). Summary judgment is improper if the non-moving party can demonstrate the existence of disputed material facts sufficient such that a "jury could reasonably find for the non-movant." *Id.*

A motion to dismiss for lack of subject matter jurisdiction "must be decided before any consideration of a motion on the merits." *Ogle v. Church of God*, 153 F. App'x 371, 374 (6th Cir. 2005). "Parties cannot consent to subject matter jurisdiction where it is lacking, nor can they waive it." *Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir. 2004). Therefore, "[t]he existence of subject matter jurisdiction may be raised at any time, by any party, or even sua sponte by the court itself." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005).

Challenges to subject matter jurisdiction may attack the sufficiency of the complaint's allegations or the factual existence of subject matter jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). To defeat a factual attack on standing "the plaintiff can no longer rest on such mere allegations" as were set forth in the complaint, "but must set forth by affidavit or other evidence specific facts" establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotations omitted); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted).

## Argument

## I.  Plaintiff's Motion is Barred by the One-Way Intervention Doctrine.

As an initial matter, the Court must decline ruling on Plaintiff's Motion (Doc. 41), because Rule 23 and the Supreme Court's rule against one-way intervention prevent a putative class representative plaintiff from seeking a favorable decision on the merits prior to moving for class certification. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974); *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012); *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 193 F.3d 415, 429–30 (6th Cir. 1999)(concurrence).

The rule against one-way intervention exists because it is "unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Am. Pipe & Constr. Co.*, 414 U.S. at 547. As explained by Judge Moore in *Becherer*:

> Before 1966, actions for damages could be prosecuted in the federal courts as class actions without binding the absent class members prior to judgment. Absent class members were permitted to intervene and take advantage of a victory by the plaintiff in a "spurious class action," but only the named plaintiff was bound if the defendant prevailed. The 1966 revisions to Rule 23 were designed, in part, to end this one-way intervention. Now the district court is required to determine whether a class is maintainable, "[a]s soon as practicable after the commencement of an action brought as a class action." If an action is to be maintained pursuant to Rule 23(b)(3), absent class members are to be provided "the best notice practicable under the circumstances" and an opportunity to exclude themselves from the class. Once this opt-out date has passed,

10

> absent members are bound by the judgment. In order to prevent one-way intervention, it is critical that the district court make the certification determination and direct notice to the absent class members at an early stage in the litigation.

193 F.3d 415, 429–30 (6th Cir. 1999) (internal citations omitted) (concurring in judgment); *see also* Fed. R. Civ. P. 23(c)(1), (b)(3). Without the rule, unnamed absent plaintiffs could adopt a win-win posture by doing nothing and awaiting a decision on the merits. "A ruling in favor of the defendant on liability would mean there is no class, so no unnamed plaintiffs could be bound by the unfavorable decision; yet these plaintiffs would have the full benefit of any decision in their favor." *Eversole v. EMC Mortg. Corp.*, No. 05-124, 2007 WL 1558512, at *4 (E.D. Ky. May 29, 2007).

Appellate courts have repeatedly admonished putative class representatives to move for and obtain certification before requesting any determination on the merits, and have cautioned district courts to decide the certification question before making merits determinations. For example, in *Costello v. BeavEx, Inc.*, the Seventh Circuit, in affirming the denial of certification and grant of summary judgment in the plaintiff's favor, stated that plaintiffs, "by moving for class certification and partial summary judgment at the same time, came dangerously close to precluding review of the class certification decision." 810 F.3d 1045, 1057–58 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2289 (2017). The Court held that because the district court "properly ruled on class certification before granting partial summary judgment in Plaintiffs' favor" the rule against one-way intervention did not apply. *Id.*; *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 n.7 (1st Cir. 2000) ("[W]e do not pass upon the appropriateness of delaying a class certification ruling until after acting upon an individual plaintiff's summary judgment motion. We note, however, that this sequencing raises serious questions, and we urge district courts to exercise caution before deciding to embrace it." (citations omitted)).

Although a defendant is entitled to waive protection under the rule and move for judgment on the merits at any time, it is not required to do so. *Corum v. Fifth Third Bank of Kentucky, Inc.*, No. 3:99-268, 2004 WL 594996, at *3 (W.D. Ky. Mar. 3, 2004). IPC has not waived the one-way intervention defense, and in the parties' Joint Rule 26(f) planning report, IPC specifically noted that one-way intervention would be an issue if the Court ordered simultaneous certification and dispositive motion briefing deadlines. Doc. 29, at PageID 361. The Court ultimately adopted IPC's proposed bifurcation of the briefing schedule, which Plaintiff has ignored. Doc. 31 (Calendar Order). Accordingly, the Court must decline to decide Plaintiff's motion.

## II. The Court Must Deny Plaintiff's Motion Because Plaintiff Does Not Have a Private Right of Action Under the TCPA.

Even if the Court decides to rule on the merits of Plaintiff's motion for summary judgment before issuing a certification decision, the Court must nevertheless deny the motion because PHI cannot assert a claim under the TCPA. Statutory standing "limits . . . the exercise of federal jurisdiction where a plaintiff's claim falls outside the zone of interest protected by the law invoked." *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 677 (6th Cir. 2007) (quotations omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n. 2 (1998) (defining statutory standing as the inquiry into "whether *this* plaintiff has a cause of action under the statute").

Only the recipient of an unsolicited facsimile has a right of action under the JFPA. 47 U.S.C. § 277(b)(1), (3). Although the word "recipient" is not defined and courts have arrived at competing interpretations, the FCC recently made "clear that the **'recipient' of a fax is the consumer for whom the fax's content is intended and to whom the fax's content is sent by dialing that consumer's fax number**." *In the Matter of Westfax, Inc. Petition for Consideration & Clarification*, 30 F.C.C. Rcd. 8620 (adopted August 28, 2015) (emphasis added); *see generally Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468–69 (6th Cir. 2017), *reh'g en banc denied* (Sept. 1, 2017), *cert. denied*, No. 17-803, 2018 WL 1369158 (U.S. Mar. 19, 2018) (upholding denial of class

12

certification and finding common issues would not predominate where "several thousand . . . of intended fax recipients" were "current or former [of defendant's] customers."). The FCC's interpretations of the TCPA are entitled to substantial deference. *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 453 (6th Cir. 2013).

The undisputed facts show that IPC intended to send the fax to entities other than Plaintiff. R. Griffith Decl. ¶ 16; R. Griffith Dep. 54:15–25, Doc. 43 at PageID 502. This is not a matter of subjective intent: IPC's records show that IPC sent the fax to CPS, at fax number 513-922-2009. Griffith Dep. Ex. 11, Doc. 46, Part I, at 27–28 of 30. It is further undisputed that in 2015, CSPR/CPS, not PHI, customarily used the fax number (513-922-2009) that received the fax at issue in this case. Ruch Dep. at 43:19–25, 56:22–57:10. Dr. Ruch also testified that the fax machine that printed the fax was used by CSPR/CPS and another tenant, not PHI:

> Q.  So you didn't even share the fax machine in 2015?
> A.  No.

Ruch Dep. at 57:8–10.

Incidental, unintended recipients of fax or telephone communications do not have standing under the TCPA. For example, in *Kopff v. World Research Grp., LLC*, an administrative assistant picked up an unsolicited fax directed to the president of the business. 568 F. Supp. 2d 39, 42 (D.D.C. 2008). The administrative assistant and president also happened to be married. Despite the relationship, the district court found that because the fax was addressed to the husband and sent to the address on his letterhead, any claim under the TCPA belonged to the husband (who lacked standing on other grounds), and granted summary judgment to the defendant as to the wife's claims. *Id.*; *see also Leyse v. Bank of Am.*, No. 09-7654, 2010 WL 2382400, at *6 (S.D.N.Y. 2010) (holding telephone subscriber to whom a call was directed had TCPA standing, but that roommate who intercepted the call did not have TCPA standing).

13

To the extent PHI argues it owns the fax machine and subscribed to the telephone line, it has come forward with no documentation to substantiate either claim. *See* Ex. F, Notice of 30(b)(6) Deposition and Request for Documents, at p. 4 (requesting records evidencing ownership of fax receiver and owners of account). More importantly, even if it had this proof, the documentation PHI has provided demonstrates CSPR/CPS paid PHI for use of the office equipment, including the fax number, fax machine, and supplies, through a monthly equipment lease payment. Ex. D. Thus PHI was already compensated for any use of its telephone fax line and fax machine that could be attributed to communications directed to its tenants, solicited or not.

The undisputed facts here divest Plaintiff of any right of action. Accordingly, the Court must deny Plaintiff's motion for summary judgment.

## III.    PHI Lacks Article III Standing.

The Court must also find it lacks subject matter jurisdiction over Plaintiff's claim, because Plaintiff cannot establish Article III standing. *See Lujan*, 504 U.S. at 561 (plaintiffs bear the burden of establishing standing throughout a case). To satisfy Article III's standing requirements, a plaintiff must show: "(1) [it] suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (noting that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

An "injury in fact" is the "first and foremost of standing's three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). That injury must be must be "real, not abstract," and "personal and individual," *id.* at 1548, "even in the context of a statutory violation." *Id.* at 1549; *see also Soehnlen*

*v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581–82 (6th Cir. 2016) (stating courts must "scrutinize the injury-in-fact element of standing in order to determine not just whether Plaintiffs have sufficiently pleaded a statutory injury, but a constitutional one as well"). Moreover, "Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III just because they allege class claims… potential class representatives must demonstrate individual standing vis-a-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action." *Id.* at 582–83 (internal citation omitted).

PHI has failed to come forth with evidence demonstrating a concrete or a particularized injury of any kind. PHI's claim is derivative, not direct: it neither used the fax machine, nor the fax number, that the fax was sent to on May 26, 2015. PHI may have occupied the same building as its tenant, CSPR/CPS, but CSPR/CPS paid for supplies, use of the fax line, and use of the fax machine. PHI's generalized, alleged injury—costs associated with "the office supplies of the recipient such as paper, toner, and the fax machine itself" and the use of the "phone line," Doc. 1, ¶ 3—is certainly not "personal" to PHI. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that standing inquiry turns on "whether the plaintiff has made out a 'case or controversy' between *himself* and the defendant") (emphasis added); *see also US Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007) (holding that because TCPA claims are not assignable under Colorado law, plaintiffs, who took assignments of claimants' TCPA rights and aggregated those claims, lacked Article III standing).[7]

Nor is PHI's injury concrete, because it admittedly created this TCPA claim. For reasons that are clear only to PHI and its attorneys, PHI has been sorting and sending incoming faxes to its attorney for evaluation as to whether to bring a case on a contingency fee basis —despite the fact

---

[7] Regardless of whether it is permissible to assign a TCPA claim, CSPR/CPS did not assign any potential cause of action under the TCPA to PHI. Ruch Dep. 10:23–25.

that PHI no longer uses the fax machine or number to which the purportedly offending fax is directed. Garrigan Dep. 19:6-10; Ruch Dep. 43:19–25, 56:22–57:10. No court has held that picking up a fax off a fax machine used by another business or individual, on behalf of that business, constitutes a concrete injury. No court has held that mere payment for the fax line (which again, was reimbursed through the monthly equipment lease), confers standing on a TCPA plaintiff.

In that regard, this case is on point with *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). In *Stoops*, the plaintiff purchased cell phones for the purpose of receiving unsolicited calls and texts to generate TCPA claims. *Id.* at 805-06. On that evidence, the court granted summary judgment to the defendant, because the plaintiff was in essence inviting TCPA violations, and thus could not complain about an invasion of privacy or nuisance. *Id.* at 805-06. Here, as in *Stoops*, the evidence shows PHI does not seek redress of a real economic injury.

IPC acknowledges the decisions where courts have held that a plaintiff can satisfy Article III standing requirements simply by alleging the TCPA was violated. *See, e.g., Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, 235 F. Supp. 3d 882, 888 (S.D. Ohio 2017) (denying motion to dismiss for lack of standing but noting that "a failure to include proper opt-out language seems to be the type of 'bare procedural harm' that the *Spokeo* court said was insufficient to confer standing"). Courts that have found standing based upon a violation of the TCPA have also stressed the purpose of the JFPA, which is to "remedy a number of problems associated with junk faxes, including the cost of paper and ink, the difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems." *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 632–34 (6th Cir. 2015). Those concerns are not invoked in a case where it is undisputed that the plaintiff's claim is derivative of its tenant's, and the plaintiff has already been reimbursed for any alleged economic harm.

These cases are distinguishable for additional reasons. Many were decided at the pleading stage under a facial, not factual, challenge to standing. *E.g., Swetlic*, 235 F. Supp. 3d at 888. In others,

a plaintiff, who proved it was the exclusive owner and user of a fax number and machine, had complained about a fax directed to another individual or entity that had ceased using a fax number and machine. *See, e.g., Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, No. 13-2085, 2015 WL 12766497, at *3 (N.D. Ohio Sept. 4, 2015) (distinguishing *Kopff* and similar cases). In contrast, CSPR/CPS was a tenant in May 2015, and was the user of the fax machine the fax was directed to.

Under *Soehnlen*, the Court cannot allow Plaintiff to proceed with its claims on a derivative or representational basis. The evidence in this case shows that PHI's injury, if any, is limited to its employee's sorting of the fax and grouping it into a pile with other faxes—an injury it has brought upon itself, at a time when it admittedly was not using the fax number or machine in question. This is the type of "bare procedural violation, divorced from any concrete harm," precluded by *Spokeo*. 136 S. Ct. at 1549. Therefore, PHI lacks Article III standing, and its claims must be dismissed under Rule 12(h)(3) and (b)(1), or alternatively Rule 56.

**Conclusion**

For the reasons set forth herein, Defendant IPC respectfully requests that this Court grant its Counter-Motion, or alternatively deny Plaintiff's Motion.

DATED:  April 17, 2018                     **HELLMUTH & JOHNSON, PLLC**


By: _____/s/*Wilbert Farrell*_____

Wilbert Victor Farrell IV (OH ID# 0088552)
Trial Attorney
8050 West 78th Street
Edina, MN 55439
Telephone: 952-941-4005
Fax:  952-941-2337
wfarrell@hjlawfirm.com

By: _____/s/*Anne T. Regan*_____
Anne T. Regan (Admitted *Pro Hac Vice*)
(MN ID # 0333852)
Karen L. Helgeson (Admitted *Pro Hac Vice)*
(MN ID # 0387796)
8050 West 78th Street
Edina, MN 55439
Telephone: 952-941-4005
Fax:  952-941-2337
wfarrell@hjlawfirm.com
aregan@hjlawfirm.com
khelgeson@hjlawfirm.com


**ATTORNEYS FOR DEFENDANT IPC, INC.
dba PLATINUMCODE**

18

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served upon all interested parties using this Court's ECF filing system this 17th day of April, 2018.

/s/Wilbert Victor Farrell IV