**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (AT CINCINNATI)**

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually, and as the representatives of a class of similarly-situated persons, <br><br>   Physicians Healthsource, <br><br> v. <br><br> IPC, INC d/b/a PLATINUMCODE., and JOHN DOES 1-10, <br><br>   Defendants. | Civil Action No.: 1:16-cv-00301-MRB <br><br> Judge: Michael R. Barrett <br><br> **PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT** |

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Physicians Healthsource, Inc. ("Plaintiff" or "Physicians Healthsource") respectfully requests that this Court grant final approval of the Class Settlement Agreement. This Motion is supported by the attached Memorandum in Support; the Declarations of Anne T. Regan, Dorothy Sue Merryman, and Matthew E. Stubbs; and the evidentiary materials incorporated therein. Counsel for Physicians Healthsource has consulted with counsel for IPC, Inc. d/b/a PlatinumCode ("IPC") in regard to this matter, and counsel for IPC has advised that IPC will not oppose this Motion.

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC.,
individually and as the representative of a class of
similarly-situated persons

*/s/Matthew E. Stubbs*
George D. Jonson (0027124)
Matthew E. Stubbs (0066722)
MONTGOMERY JONSON, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio  45202
Phone: (513) 241-4722

1

|   |   |
|---|---|
| Fax: | (513) 768-9227 |
| Email: | gjonson@mojolaw.com |
|   | mstubbs@mojolaw.com |

*/s/Brian J. Wanca*
Brian J. Wanca (*pro hac vice*)
Ryan Kelly (*pro hac vice*)
Ross Good (*pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Fax:  847-368-1501
bwanca@andersonwanca.com
rgood@andersonwanca.com
rkelly@andersonwanca.com

*Counsel for Plaintiff and the Class Members*

## MEMORANDUM IN SUPPORT

**I.    STATEMENT OF FACTS**

The parties reached an agreement to settle this matter on a class-wide basis ("the Class Settlement Agreement[1]") and then sought preliminary approval of this settlement via the Motion for Class Certification and Preliminary Approval of Class Settlement Agreement (ECF No. 111). On June 25, 2019, this Court granted that Motion, thereby certifying a class, granting preliminary approval of the Class Settlement Agreement, and ordering the parties to administer the class.[2]

In compliance with that Order, the parties and a third-party class administrator, Class-Settlement.com, have administered the class.  This began with the sending of CAFA  notices – via letters dated June 27, 2019 – to the Attorneys General (or designated CAFA coordinators) for the

---

[1]    The Class Settlement Agreement is before the Court as ECF No. 111-1.

[2]    *See* Order Granting Certification of a Class and Preliminary Approval of Class Settlement Agreement (ECF No. 112), p. 1 ("Upon consideration of Plaintiffs' Motion for Certification of Class and Preliminary Approval of Class Settlement Agreement, this Court **GRANTS** the Motion and **ORDERS** as follows . . . .")

2

following states or territories: Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, New Hampshire, New Jersey, New Mexico, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Vermont, Washington, Wisconsin, West Virginia, Wyoming, American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the Virgin Islands.[3] The Office of the Attorney General for the State of New York inquired as to the number of Class Members within the State of New York. No other recipient of a CAFA notice has responded, and no recipient of a CAFA notice has raised any objections to the Class Settlement Agreement.[4]

Class-Settlement then sent the Notice of Class Action and Proposed Settlement, which included a claim form, to the fax numbers of the 6,552 Class Members on August 19, August 21, and August 23.[5] 721 of the Class Members could not be reached by facsimile. Class-Settlement obtained a physical address for each of them via the U.S. Postal Service's National Change of Address Database and then sent the Notice of Class Action and Proposed Settlement to these Class Members via regular mail on or about August 23, 2019.[6] 159 of these letters were returned as undeliverable. Class-Settlement was able to find valid addresses for 59 of these Class Members via forwarding information or a skip-trace search and then sent these 59 Class Members the Notice

---

[3] *See* Declaration of Anne T. Regan Regarding CAFA Notice of Proposed Settlement ("the Anne Regan Declaration"), ¶¶ 2-4, fn. 1. The Anne Regan Declaration is attached hereto as Exhibit A.

[4] Anne Regan Declaration, ¶¶ 5, 8.

[5] *See* Declaration of Dorothy Sue Merryman, ¶¶ 11-13. The Declaration of Dorothy Sue Merryman is attached hereto as Exhibit B. The Notice of Class Action and Proposed Settlement, including the claim form, is attached as Exhibit 2 to the Declaration of Dorothy Sue Merryman.

[6] Dorothy Sue Merryman Declaration, ¶¶ 8, 14.

3

of Class Action and Proposed Settlement via regular mail on or about October 3, 2019.[7]

The Class Members were able to submit claims by returning the claim forms via mail or fax. Additionally, Class-Settlement set up a website, www.class-settlement.com, at which the Class Members could submit claims online.[8] As of October 3, 2019, 134 Class Members have submitted timely and valid claims while two Class Members have submitted untimely but otherwise valid claims.[9] To this point, only one Class Member has opted out, and no Class Member has submitted an objection of any kind.[10]

## II. **DESCRIPTION OF THE SETTLEMENT**

The settlement between the parties was formally set forth in the Class Settlement Agreement. In consideration for a release of claims by the Class Members arising from IPC's "alleged use of a facsimile machine to transmit the IPC fax"[11] to them, IPC agreed to pay the total sum of $625,000 into a settlement fund ("the Settlement Fund"). Pursuant to the terms of the Class Settlement Agreement, counsel for the Class Members ("Class Counsel") proposes to allocate the Settlement Fund as follows.

### A. **Attorney Fees, Costs, and Administration Expenses**

Class Counsel requests an award of attorney's fee award of $156,250, which represents 25% of the Settlement Fund ("the Attorney Fee Award"). Additionally, Class Counsel requests an award of expenses incurred in the prosecution of this claim in the amount of $32,935.61. This

---

[7] Dorothy Sue Merryman Declaration, ¶ 14.

[8] Dorothy Sue Merryman Declaration, ¶¶ 16-17.

[9] Dorothy Sue Merryman Declaration, ¶¶ 18.

[10] Dorothy Sue Merryman Declaration, ¶ 19; Declaration of Matthew E. Stubbs, ¶ 4. The Declaration of Matthew E. Stubbs is attached hereto as Exhibit C.

[11] Class Settlement Agreement (ECF No. 111-1), ¶ 15.

consists of the following: Montgomery Jonson has incurred expenses of $15,360.61 and Anderson+Wanca has incurred expenses of $600.00.[12] All of these expenses consist of ordinary litigation expenses such as court costs, court reporter fees, travel expenses, postage, *etc.* Additionally, Class-Settlement charged $17,575[13] for its services in administering the class.

### B. Named Plaintiff Award to Physicians Healthsource

Class Counsel also requests an award for Physicians Healthsource for its service as the named plaintiff/class representative ("the Named Plaintiff Award") of $7,500. Aside from its allocated share as a Class Member, which is described below, the Named Plaintiff Award represents the entire relief obtained by Physicians Healthsource for its service as the named plaintiff and representative of the class. As many courts have recognized, "[i]t is very common in class action cases for service or incentive payments to be paid to named plaintiffs or class representatives in addition to their proportionate share of the recovery. Such payments compensate plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action."[14]

Notably, Physicians Healthsource was offered $17,500 to settle its individual claim at the outset of the case.[15] Physicians Healthsource rejected this offer in the interest of obtaining relief

---

[12] Declaration of Matthew E. Stubbs, ¶¶ 9-10. The fee of $17,575 for Class-Settlement's services in included in the breakdown of the expenses of Montgomery Jonson as Montgomery Jonson has already paid this fee.

[13] A true and accurate copy of the Final Invoice of Class-Settlement is attached as Exhibit B-1 to the Declaration of Dorothy Sue Merryman.

[14] *Faile v. Lancaster County*, 2012 U.S. Dist. LEXIS 189610. *41 (D.S.C. 2012); *see also Huguley v. General Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989)("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burdens of litigation that they have borne."); *Gulino v. Symbol Techs., Inc.*, 2007 U.S. Dist. LEXIS 76915, *5 (E.D.N.Y. 2007)("Payments to class representatives can properly be included in class action settlements . . . to compensate the named plaintiffs for the efforts they have made on behalf of the class.")

[15] Deposition of John Ruch (ECF No. 50), p. 89 ("at the outset of the case, almost a month after it was filed – even less than a month after it was filed, IPC offered $17,500 to settle the case")

5

for the putative class members.[16] The Named Plaintiff Award requested for Physicians Healthsource is less than half of the amount that Physicians Healthsource could have received had it simply accepted IPC's offer to settle its individual claim at the outset of the case.

### C. Payments to Class Members

Pursuant to the terms of the Class Settlement Agreement, each Class Member who submitted a valid claim form will receive $100.00 as well a credit of $100.00 toward the purchase of cohesive bandages from IPC, the product marketed in the IPC Fax. Class Members who did not submit valid claim forms will also receive the credit of $100.00 toward the purchase of cohesive bandages from IPC. The credit is appropriate and particularly valuable in this case because IPC directed the IPC Fax largely to existing customers. Therefore, a substantial number of Class Members will likely benefit from this credit.

### D. Allocation of Remaining Settlement Fund

The sum of the proposed Attorney Fee Award ($156,250), proposed expenses ($32,935.61), proposed Named Plaintiff Award ($7,500.00), and the payments to Class Members ($13,400) is $210,085.61. The balance of the Settlement Fund will be returned to IPC, along with any amounts that result from uncashed checks to Class Members.

### III. THE CLASS SETTLEMENT AGREEMENT MEETS THE CRITERIA FOR FINAL APPROVAL

The Sixth Circuit has established a three-step procedure for approval of a settlement agreement of a class action: "The settlement shall first be preliminarily approved by the court. Then notice must be given to interested persons. Finally, the court must decide whether the

---

[16] Deposition of John Ruch (ECF No. 50), p. 99 ("It [the letter containing the settlement offer of $17,500] was addressed to me, I recall the e-mail and the content of it, and at the time, we rejected the offer.")

settlement agreement is reasonable after having held a hearing."[17]  Under Federal Civil Rule 23(e)(2), a class action settlement should be approved "on finding that it is fair, reasonable, and adequate."  Additionally, "[i]n making this determination, the court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class actions."[18]

Because settlement is the "preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."[19]  Consistent with this presumption, this Court need only "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."[20]  The Sixth Circuit has established seven factors ("the *UAW* factors") for a district court to consider in deciding whether to approve a proposed class action settlement:

> A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[21]

---

[17]     *Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1276, 1279 (N.D. Ohio 1987); *see also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

[18]     *IUE-CWA*, 238 F.R.D. at 593 (E.D. Mich. 2006); *see also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991)("The law generally favors and encourages the settlement of a class action.); *see also UAW v. GM*, 2006 WL 891151, at *12 (E.D. Mich. 2006)(also recognizing "the general federal policy favoring the settlement of class actions").

[19]     *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).

[20]     *UAW v. GM*, 2006 U.S. Dist. LEXIS 14890, at *40 (E.D. Mich. 2006); *see also Shy v. Navistar Int'l Corp.*, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993)("It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable.").

[21]     *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013)(*quoting UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. Mich. 2007)).

Finally, this Court has the discretion to "choose to consider only those factors that are relevant to the settlement and . . . weigh particular factors according to the demands of the case."[22] As set forth below, all of these factors demonstrate the Class Settlement Agreement is fair, reasonable, and adequate.

### (1). The Risk of Fraud or Collusion

The first *UAW* factor favors approval of the Class Settlement Agreement because there is no risk of fraud or collusion. The interests of Physicians Healthsource and IPC are fundamentally adverse, and, aside from the Named Plaintiff Award, Physicians Healthsource is not receiving any relief different in kind or character from the Class Members. Moreover, the Class Settlement Agreement was achieved with the assistance and participation of Judge Arthur J. Boylan, a retired federal magistrate judge for the United States District Court of Minnesota. Nothing in the negotiation process or agreement itself raises any concerns of collusion or fraud.

This contrasts with the collusive nature of the settlement in *Vassalle v. Midland Funding*[23], a recent class action certification that was reversed by the Sixth Circuit Court of Appeals. In *Vassalle,* a debt collector was counter-claimed by three sets of debtors, who all alleged that the debt collector was using fraudulent "robo-affidavits" to establish its claims. The debtors all sought certification of a class, and the parties settled on a classwide basis, which the U.S. District Court for the Southern District of Ohio approved. On appeal, the Sixth Circuit reversed the class certification principally because "the settlement gives preferential treatment to the Named Plaintiff while only perfunctory relief to unnamed class members."[24] Specifically, the Named Plaintiff

---

[22] *See UAW*, 497 F.3d at 631.

[23] 2708 F.3d 747 (6th Cir. 2013).

[24] *Id.* at 12 (*internal quotations and citation omitted*).

received an incentive award of thousands of dollars as well as forgiveness of its debts also worth thousands. In contrast, each of the absent class members would have received only a few dollars from the common fund; no forgiveness of their debts; and, most egregiously, were stripped of defenses they might have had if the debt collector eventually sued them. In effect, the proposed settlement would have left the absent class members worse off while providing the class representatives and their counsel with substantial benefits.

This Class Settlement Agreement in this case raises no such concerns. First, Physicians Healthsource is not receiving debt forgiveness or any other remedy not also provided to the Class Members. On the contrary, aside from the Named Plaintiff Award, which is subject to this Court's approval, Physicians Healthsource is receiving the exact same relief as the Class Members. Second, the relief provided to the Class Members is not perfunctory. On the contrary, each Class Member who submitted a valid claim will receive $100.00 as well as $100.00 in credit toward the purchase of cohesive bandages, the product advertised in the IPC Fax, from IPC. And all 6,552 of the Class Members will receive a $100.00 in credit toward the purchase of cohesive bandages from IPC. Because the IPC Fax was largely to IPC's already-existing customers, a substantial number of Class Members will likely benefit from this credit.

**(2). Complexity, Expense, and Likely Duration of the Litigation**

The second *UAW* factor also favors approval of the Class Settlement Agreement. This case was originally filed in February of 2016. Although junk fax claims are not especially complex, no class action is simple. In this case, the parties litigated a number of discovery disputes, conducted written discovery, took depositions and briefed both dispositive motions and class certification motions before engaging in informal settlement negotiations and a formal mediation before Magistrate Judge Boylan.

Class Counsel has spent hundreds of hours prosecuting this action to this point. Although the work in the case has now been completed, approval of the Class Settlement Agreement would resolve the remaining issues and provide relief to the Class Members without the expense and risk of more litigation and the possibility of an appeal.

### (3). The Amount of Discovery Engaged in by the Parties

The third *UAW* factor also favors approval of the Class Settlement Agreement. Physicians Healthsource sent several sets of written discovery to IPC, which included interrogatories, document requests, and requests for admission. Both sides conducted depositions, and the parties formally litigated multiple discovery disputes. This discovery culminated in the filing of dispositive motions by both sides and a class certification motion. All of these motions were fully briefed at the time of the parties' settlement.

### (4). The Likelihood of Success on the Merits

The fourth *UAW* factor also favors approval of the Class Settlement Agreement. While the transmission of the IPC Fax appears to be a clear violation of the Junk Fax Prevention Act or Telephone Consumer Protection Act ("TCPA"), certifying a nationwide class is never easy.[25]

And individual claims under the TCPA are virtually non-existent. The TCPA provides statutory damages of $500.00 for each violation.[26] However, as it does not provide for attorney fees, individual claimants must generally proceed *pro se*. Needless to say, few individuals are willing to undertake the expense and ordeal of a lawsuit for the prospect of a winning a few hundred dollars. Finally, despite being in effect for over twenty years, the prohibition of facsimile

---

[25] *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987)("this matter was a complex national class action. . . . prosecution and management of a complex national class action requires unique legal skills and abilities.")

[26] 47 U.S.C. § 227(b)(3)(A)-(C)("A person or entity may . . . recover actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater.").

advertising in the TCPA appears to be largely unknown in the public at-large. The confluence of these factors – minimal damages; the inability to obtain counsel; and popular ignorance of the law – effectively preclude individual claims under the TCPA. This case is no exception. Despite IPC's transmission of the IPC Fax to thousands of recipients in dozens of states, the only recipient who bothered to file suit was Physicians Healthsource.

In discovery, IPC produced evidence that nearly all of the recipients of the IPC Fax were existing customers and, therefore, had an "established business relationship" with IPC within the meaning of the TCPA and/or had provided IPC with "express permission" to send them advertisements via facsimile. Both of these factors provided IPC defenses to liability under the TCPA as well as to class certification. (*See* ECF Nos. 55-61). IPC also challenged Plaintiff's ability to bring its individual claims through a Motion to Dismiss for Lack of Jurisdiction and strenuous opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 48, 54)

Nonetheless, both sides recognized the risk this case presented. Due to the efforts of Physicians Healthsource and Class Counsel – and in accordance with the Class Settlement Agreement – each person who received the IPC Fax was given the opportunity to receive $100.00 in cash by completing a simple claim form. Additionally, all of the Class Members will receive a credit of $100.00 toward the purchase of cohesive bandages from IPC, the product marketed in the IPC Fax. This outcome far exceeds the negative value of an individual claim or the uncertainty of a class action.

### (5). **The Opinions of Class Counsel and Class Representatives**

The fifth *UAW* factor also favors approval of the Class Settlement Agreement. Class Counsel has prosecuted numerous class actions involving alleged violation of the TCPA, for which the ultimate goal is obtaining the full statutory damages for each member of the class. Given the

increased stakes of a class action, these cases are invariably defended both capably and vigorously. In this case, each person who received the IPC Fax will receive a credit of $100.00 toward the purchase of cohesive bandages from IPC and was given the opportunity to receive $100.00 in cash by completing a simple claim form – without the risk, expense, or inconvenience of filing a lawsuit. This is a successful outcome for the Class Members, and Class Counsel endorses the proposed settlement without reservation.

### (6). The Reaction of Absent Class Members

The sixth *UAW* factor also supports approval of the Settlement Agreement. Of the 6,552 Class Members, only one opted out, and no one has submitted an objection of any kind.

### (7). Public Interest

The seventh *UAW* factor strongly favors approval of the Class Settlement Agreement. The TCPA has gone largely unenforced by the F.C.C. and the other public entities that are primarily responsible for doing so. Additionally, individual actions under the TCPA are rare and little more than a nuisance to large-scale violators of the TCPA. Accordingly, class actions such as this are the only effective means of enforcing this decades-old law.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff Physicians Healthsource, Inc. respectfully requests that this Court enter an order: (i) granting final approval of the Class Settlement Agreement; (ii) directing the class administrator, Class-Settlement, to complete administration of the Class Settlement Agreement; and (iii) granting an award of $156,250 to Class Counsel in attorney fees, an award of $7,500 to Physicians Healthsource for its service as class representative, and an award of $32,935.61 in expenses.

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC.,
individually and as the representative of a class of
similarly-situated persons

*/s/Matthew E. Stubbs*
George D. Jonson (0027124)
Matthew E. Stubbs (0066722)
MONTGOMERY JONSON, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio  45202
Phone: (513) 241-4722
Fax: (513) 768-9227
Email: gjonson@mojolaw.com
mstubbs@mojolaw.com


*/s/Brian J. Wanca*
Brian J. Wanca (*pro hac vice*)
Ryan Kelly (*pro hac vice)*
Ross Good (*pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847-368-1500
Fax:  847-368-1501
bwanca@andersonwanca.com
rgood@andersonwanca.com
rkelly@andersonwanca.com

*Counsel for Plaintiff and the Class Members*


**CERTIFICATE OF SERVICE**

I hereby certify that on, October 21, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.


/s/ *Matthew E. Stubbs*
Matthew E. Stubbs