**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (AT CINCINNATI)**

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually, and as the representatives of a class of similarly-situated persons, | ) ) ) | Civil Action No.: 1:16-cv-00301-MRB |
| | ) | Judge: Michael R. Barrett |
| Physicians Healthsource, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S MOTION FOR AWARD OF** |
| | ) | **ATTORNEY FEES** |
| IPC, INC d/b/a PLATINUMCODE., and JOHN DOES 1-10, | ) ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiff

Physicians Healthsource, Inc. ("Plaintiff" or "Physicians Healthsource") respectfully requests

that this Court grant an award of attorney fees to Class Counsel. This Motion is supported by the

attached Memorandum in Support, the Declaration of Matthew E. Stubbs; and the evidentiary

materials incorporated therein. Counsel for Physicians Healthsource has consulted with counsel

for IPC, Inc. d/b/a PlatinumCode ("IPC") in regard to this matter, and counsel for IPC has

advised that IPC will not oppose this Motion.

> Respectfully submitted,
>
> PHYSICIANS HEALTHSOURCE, INC.,
> individually and as the representative of a class of
> similarly-situated persons
>
> */s/Matthew E. Stubbs*
> George D. Jonson (0027124)
> Matthew E. Stubbs (0066722)
> MONTGOMERY JONSON, LLP
> 600 Vine Street, Suite 2650
> Cincinnati, Ohio 45202

1

| Phone: | (513) 241-4722 |
| Fax: | (513) 768-9227 |
| Email: | gjonson@mojolaw.com |
| | mstubbs@mojolaw.com |

*/s/Brian J. Wanca*
Brian J. Wanca (*pro hac vice*)
Ryan Kelly (*pro hac vice)*
Ross Good (*pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501
bwanca@andersonwanca.com
rgood@andersonwanca.com
rkelly@andersonwanca.com

*Counsel for Plaintiff and the Class Members*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION / STATEMENT OF FACTS

With respect to the facts of the case in general, Physicians Healthsource respectfully directs this Court to the Memorandum in Support of Plaintiff's Motion for Preliminary Approval (ECF No. 111), which included a recitation of the basic facts and the procedure up to that point. As to the facts regarding the administration of the class, Physicians Healthsource respectfully directs this Court to the Motion for Final Approval of Class Settlement Agreement, which has been filed contemporaneously herewith.

### II. ARGUMENT OF LAW

#### A. Basis for Court's Authority to Award Attorney Fees

This Court has an equitable right to award attorney fees to Class Counsel as "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled

2

to a reasonable attorney's fee from the fund as a whole."[1]  With regard to class actions in particular, Rule 23(h) of the Federal Rules of Civil Procedure also grants this Court the power to award such fees: "In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."

Under the parties' Class Settlement Agreement, which was preliminarily approved by the Court[2], the parties agreed that "the Plaintiff will seek approval of . . . attorney's fees of up to $156,250, which represents one quarter of the Settlement Fund."[3]  The Class Members were provided notice of this request via the Notice of Proposed Class Action and Settlement.[4] Additionally, the Class Settlement Agreement and Notice of Proposed Class Action and Settlement were filed on the public docket, published on the Class-Settlement website, and remain available to any Class Member or other person who chooses to review them.

### B. An Award of Attorney Fees of One Third of the Settlement Fund Compares Favorably to Recent Awards in Previous Class Actions in the Sixth Circuit.

---

[1]     *E.g. Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see also In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig*., 268 F. Supp.2d 907, 921 (N.D. Ohio 2003)(recognizing that an award of fees in common fund case is "equitable in nature and allows an award of fees to a plaintiff whose suit creates, enlarges, or protects a fund shared by members of a class.")(*internal quotations and citations omitted).*

[2]     *See* Order Granting Certification of a Class and Preliminary Approval of Class Settlement Agreement (ECF No. 112), p. 1 ("Upon consideration of Plaintiffs' Motion for Certification of Class and Preliminary Approval of Class Settlement Agreement, this Court **GRANTS** the Motion and **ORDERS** as follows . . . .")

[3]     Class Settlement Agreement (ECF No. 111-1), ¶ 10.

[4]     *See* Notice of Proposed Class Action and Settlement (ECF No. 111-4), p. 3 ("Class Counsel will request that the Court award them attorney fees from the Settlement Fund.  While this amount is determined by the Court, Class Counsel will not request an amount in excess of one-quarter of the Settlement Fund.")  Numerous Courts in the Sixth Circuit have recognized the adequacy of such notice.  *E.g. Bessey v. Packerland Plainwell, Inc*., 2007 U.S. Dist. LEXIS 79606, *11 (W.D. Mich. 2007)("reasonable notice of the maximum amount counsel intended to seek was included in the Class Notice describing the settlement. Specifically, the Class Notice's language indicating that class counsel "will ask the Court for attorneys' fees plus reasonable out-of-pocket case costs and expenses costs up to 33% of the settlement fund" provides a fair estimate of the amount counsel would seek, consistent with the requirement of Fed.R.Civ.P. 54(d)(2)(B).")

In class actions involving a common fund, the U.S. Supreme Court has historically determined the attorney fee award on a percentage-of-fund basis.[5] The Sixth Circuit has long adhered to this method as well.[6] While Sixth Circuits Courts also have the discretion to base attorney fee awards on the lodestar method[7], "the trend in the Sixth Circuit is toward adoption of a percentage of the fund method in common fund cases."[8] Whether the Court elects to use the percentage-of-fund, lodestar, and/or a lodestar cross-check[9], the fee request in this case is

---

[5]     *E.g. Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)("this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Shaw v. Toshiba Am. Info. Sys., Inc.* 91 F. Supp. 2d 942, 962 (E.D. Tex. 2000)("The United States Supreme Court has consistently held that the percentage method is a proper method for assessing the reasonableness of attorneys' fees in common fund cases."); *Edmonds v. United States*, 658 F. Supp. 1126, 1129 (D.S.C. 1987)("This is a common fund case. Court-awarded fees have been standard in such cases in this country for more than a century.")

[6]     *E.g. Lowther v. AK Steel Corp.,* 2012 U.S. Dist. LEXIS 181476 (S.D. Ohio)("Numerous courts have used the 'percentage of recovery' method in awarding fees in common fund cases."); *Johnson v. Midwest Logistics Sys.,* 2013 U.S. Dist. LEXIS 74201, *15 (S.D. Ohio)("The 'common fund doctrine' or percentage-of-recovery method has been recognized by the Sixth Circuit as an appropriate formula by which to calculate attorney fees in common fund cases.")

[7]     *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 517(6th Cir. Mich. 1993)("we conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and that the determination of which method is appropriate in any given case will depend upon its circumstances."); *see also Lowther v. AK Steel Corp*., 2012 U.S. Dist. LEXIS 181476, *12-*13 (S.D. Ohio 2012)("In the alternative to the percentage of recovery approach discussed above, fee awards may be determined by the "lodestar approach," which involves reviewing the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.")

[8]     *In re Southeastern Milk Antitrust Litig*., 2013 U.S. Dist. LEXIS 70167, *13 (E.D. Tenn. 2013); *see also In re Telectronics Pacing Sys., Inc.,* 186 F.R.D. 459, 483 (S.D. Ohio 1999)("the preferred method in common fund cases has been to award a reasonable percentage of the fund to Class Counsel as attorneys' fees"); *Manners v. American General Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22880, *29 (M.D. Tenn. 1999)("The preferred approach to calculating attorneys' fees to be awarded in a common benefit case is as a percentage of the class benefit.")

[9]     *Johnson v. Midwest Logistics Sys.*, 2013 U.S. Dist. LEXIS 74201, *17 (S.D. Ohio 2013)("In contrast to employing the lodestar method in full, when using a lodestar cross-check, 'the hours documented by counsel need not be exhaustively scrutinized by the district court"); *In re Cardinal Health Inc. Sec. Litigs*., 528 F. Supp.2d 752, 767 (S.D. Ohio 2007)("The Court performs a lodestar cross-check by comparing the lodestar multiplier used in this case to lodestar multipliers used in similar cases. In contrast to employing the lodestar method in full, when using a lodestar cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.")(*internal quotations and citation omitted).*

"reasonable under the circumstances"[10] and, therefore, should be awarded by the Court.

### 1.    Percentage-of-Fund Method

Class Counsel negotiated a Settlement Fund[11] of $625,000 on behalf of the class that consisted of $100.00 in cash and a $100.00 voucher toward the purchase of cohesive bandages from IPC, the product marketed in the IPC Fax. The credit is appropriate and particularly valuable in this case because IPC directed the IPC Fax largely to its existing customers. Thus, a substantial number of Class Members will likely benefit from this credit.

Granting attorney fees of one-quarter of the Settlement Fund is actually less than the customary fee arrangement for plaintiffs' counsel in non-class cases, a factor recently cited by the U.S. District Court in Tennessee when awarding substantial attorney fees in a class action case:

> . . . the Court sees no good reason why class action lawyers who represent clients on a contingency-fee basis in a case such as this should receive lower fees on a percentage basis than do contingency-fee lawyers in litigation representing individual clients, which typically amount to 33% or more of the recovery.[12]

Moreover, this percentage fits squarely within the fee awards recently approved by Sixth Circuit Courts in class actions[13], including cases involving attorney fees far in excess of the fees

---

[10]      *See Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 911 (S.D. Ohio 2001)("All the Sixth Circuit requires is that the award of attorneys' fees in common fund cases must be reasonable under the circumstances.")

[11]      Capitalized terms have the same meaning as used in the Plaintiffs' Motion for Class Certification and Preliminary Approval (ECF No. 111).

[12]      *In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167. *31 (E.D. Tenn. 2013).

[13]      *E.g. Johnson v. Midwest Logistics Sys.*, 2013 U.S. Dist. LEXIS 74201, *16-*17 (S.D. Ohio 2013)("Class Counsel request an award of attorney fees and expenses as a percentage of the Settlement Funds, to be capped at a gross percentage of thirty-three percent (33%) of the actual Settlement Funds . . . . the Court hereby approves Class Counsel's requested . . . common fund fee award."); *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 U.S. Dist. LEXIS 71204, *34-*35 (E.D. Mich. 2013)("This Court preliminarily approves Plaintiffs' counsel's request that it be paid $452,100 in attorney fees and $30,000 in costs from the $1.4 million settlement fund. Various courts have

requested in this case.[14]

There is no reason to deviate any further downward from the one-third convention than the requested percentage of 25% in this case. As discussed further herein, class actions under the Telephone Consumer Protection Act ("TCPA") are difficult and risky. Few TCPA claims result in the certification of a class, and very few attorneys are willing to prosecute such claims. Accordingly, the requested fee award is justified both "for the results achieved"[15] and "to attract competent counsel"[16] to prosecute TCPA claims.

## 2. Lodestar / Lodestar Cross-Check Method

Although the requested fee award may be justified under the percentage-of-fund method alone, the attorney fee request is also supported under a lodestar or lodestar cross-check method. Under this method, "the number of hours reasonably expended on the litigation [is] multiplied by

expressed approval of attorney fees in common fund cases at similar or higher percentages than that requested by Plaintiffs' counsel."); *Bessey v. Packerland Plainwell, Inc*., 2007 U.S. Dist. LEXIS 79606, *13-*14 (W.D. Mich. 2007)("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery. The court concludes that the figure sought here of approximately 33 percent, which includes costs and expenses, is reasonable. Plaintiffs' counsel have created a fund from which over 2,000 claimants will benefit.")(*internal quotations and citations omitted); Mahoney v. Andrews (In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*), 2009 U.S. Dist. LEXIS 45790, *16 (S.D. Ohio 2009)("class counsel seeks recovery of 30% of the settlement amount, which is $ 120,000. This request is within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit.")

[14]   *See In re Southeastern Milk Antitrust Litig*., 2013 U.S. Dist. LEXIS 70167, *16 (E.D. Tenn. 2013)("the attorneys' fees requested represent one-third of the settlement fund. Although the total fee requested is a very large amount ($52,866,667, for a total fee award of $101,200,000 when combined with the previously awarded fees of $48,333,333), the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.")

[15]   *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir. Mich. 1993)("When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.")

[16]   *Dillworth v. Case Farms Processing, Inc*., 2010 U.S. Dist. LEXIS 20446, *18 (N.D. Ohio 2010)("An award [of attorney fees] is reasonable if it is adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers.")(*internal quotations and citations omitted)*; *see also Lowther v. AK Steel Corp*., 2012 U.S. Dist. LEXIS 181476, *16 (S.D. Ohio 2012)("The setting of reasonable hourly rates is appropriate to ensure that attorneys willing to represent [claimants in class action cases] are adequately paid so that they and others like them will continue to take on such cases.")

a reasonable hourly rate."[17]  Sixth Circuit courts have provided the following explanation of the criteria to be considered in determining an appropriate rate for counsel:

> The reasonable hourly rate is determined by reference to the prevailing market rates in the relevant community. . . . Ascertaining the prevailing market rates in the relevant community involves consideration of experience, specialization, effort, and performance, and setting rates sufficient to ensure that class counsel are fairly compensated for the amount of work done and the results achieved.[18]

With regard to this case, there are very few attorneys with the technical skills, resources, and inclination to prosecute class actions under the TCPA.  Moreover, virtually all of the work performed on behalf of the Class Members was performed by partner-level attorneys with over twenty years of experience, including many years of experience with TCPA claims in particular and class actions in general.  In similar cases, Sixth Circuit Courts have approved hourly rates for the attorneys ranging from $350/hour to $500/hour.[19]  Under the Laffey Matrix, which has often

---

[17]     *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350, *5 (E. D. Mich. Sept. 28, 2000) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).

[18]     *Lowther v. AK Steel Corp*., 2012 U.S. Dist. LEXIS 181476, *13 (S.D. Ohio 2012)

[19]     *See Michel v. WM Healthcare Solutions, Inc*., 2014 U.S. Dist. LEXIS 15606, *62 (S.D. Ohio 2014)(approving rates of $350 for Matthew Stubbs and $350 for George Jonson in a similar case); *Date v. Sony Elecs., Inc*., 2013 U.S. Dist. LEXIS 108095, *39-*40 (E.D. Mich. 2013)("In this case, the actual lodestar for class counsel is in excess of $1,075,000, based upon a blended rate (including hourly rates of support staff) of $375 per hour."); *Johnson v. Midwest Logistics Sys*., 2013 U.S. Dist. LEXIS 74201,*17 (S.D. Ohio 2013)("Class Counsel expended over 158 hours to prosecute this action at an average rate of $375.00 per hour, for a total approximate lodestar amount of $64,936.85."); *See Weitz & Luxenberg, P.C. v. Sulzer Orthopedics,* Inc. (In re Sulzer Orthopedics, Inc.), 398 F.3d 778, 780 (6th Cir. Ohio 2005)("the Court 'equalized' the attorneys' lodestar calculations by substituting the following hourly rates, depending on years of practice: 1-5 years, $ 200/hour; 6-9 years, $ 300/hour; 10-14 years, $ 350/hour; and 15 years and over, $ 500/hour."); *Lowther v. AK Steel Corp*., 2012 U.S. Dist. LEXIS 181476, *16 (S.D. Ohio 2012)("Plaintiffs suggest that for purposes of the lodestar analysis . . . hourly rates of $500/hour may be applied for the senior attorneys . . . .  the rates requested are within the range of rates approved by courts in other actions and within the range of hourly rates charged by large defense law firms."); *Liberty Legal Found. v. Democratic Nat'l Comm*., 2012 U.S. Dist. LEXIS 171708 *25 (W.D. Tenn. 2012)("the Court concludes that based on its experience and knowledge of the market for similar services in this District, a reasonable rate for the type of work counsel performed on behalf of Defendants would be $225 per hour for legal services by an associate attorney . . . and $500 per hour for legal services by senior partners"); *In re Oral Sodium Phosphate Solution-Based Prods. Liab. Action*, 2010 U.S. Dist. LEXIS 128371, *24 (N.D. Ohio 2010)("This Court adopts the same approach and employs the following . . . rates: $500 for partner-level attorneys; $300 for associate

been referenced by Sixth Circuit courts, the fees appropriate for the attorneys would range from $899/hour for attorneys with 20+ years of experience (George Jonson, Brian Wanca, Matthew Stubbs); and $458/hour for attorneys with 4-7 years of experience (Ross Good).[20]

While accessible and simple to use, the Laffey Matrix was intended to assess the rates of attorneys in the Baltimore/Washington D.C. area. A similar model specific to attorneys in the Cincinnati area is the "Rubin rates," which arose from Judge Rubin's 1983 committee's determination of reasonable attorney fee rates for the Southern District of Ohio. Courts in the Southern District continue to use Judge Rubin's rates, by adjusting the rates upward at 4% per year.[21] Under this framework, the hourly rates for partner-level attorneys with more than twenty years of experience would be $466.94 in 2016 (when the case was filed) and $525.24 in 2019.[22]

Finally, the Ohio State Bar Association conducts a regular survey of attorneys and law firms to determine the average salaries, hourly rates, hours worked, and other economic aspects of the legal profession in Ohio. In the latest report of this survey[23], partners at firms with eight or more attorneys charged rates, on average, of $322/hour in 2012 with an average annual increase of 2.85% (for all full-time attorneys in private practice) over the past fifteen years.

---

attorneys; and $150 for paralegals.")

[20]     The Laffey Matrix is available at www.laffeymatrix.com.

[21]     *E.g. Michel v. WM Healthcare Sols., Inc*., 2014 U.S. Dist. LEXIS 15606, at *60; *Hunter v. Hamilton Cnty. Bd. of Elections*, 2013 U.S. Dist. LEXIS 141297at *17 (S.D. Ohio 2013); *Georgia-Pacific LLC v. Am. Intern. Specialty Lines Ins. Co.*, 278 F.R.D. 187, 192 (S.D. Ohio 2010); *West v. AK Steel Corp. Ret. Acc. Pension Plan*, 657 F. Supp. 2d 914, 932 (S.D. Ohio 2009). *Fredericks v. Potter*, Case No. 1:06-CV-113, Doc. 123 (S.D. OH 2009), *Lee v. Javitch, Block & Rathbone LLP*, 568 F. Supp. 2d. 870. 873 (S.D. Ohio 2008); *Kindel v. Continental Casualty Co.*, 2005 WL 1241975. *14 (S.D. Ohio 2005).

[22]     There appears to be no publicly available table or list of Rubin rates. Accordingly, the Rubin rates for this case were determined by calculating the rates forward from the table of 2012 Rubin rates published in *Michel v. WM Healthcare Sols., Inc*., 2014 U.S. Dist. LEXIS 15606, at *60 (S.D. Ohio 2014)

[23]     This report, which is entitled "The Economics of Law Practice in 2013", is available at www.ohiobar.org/2013econstudy.

Applying a 2.85% annual increase to the average rate of $322/hour in 2012 would yield an average hourly rate of $391.90 in 2019.

Class Counsel requests that this Court approve a rate of $350/hour for all of the attorneys in this case. This hourly rate would be substantially below the rates as determined by the Laffey Matrix and Rubin Rates; at or below the range of hourly rates approved in recent, similar cases by Sixth Circuit courts; and even below the average rate for partners in similar-sized firms in Ohio according to the latest report produced by the Ohio State Bar Association. Additionally, Class Counsel requests that this hourly rate be applied to all of the work performed by Class Counsel, as they have received no compensation for any work performed in this matter to date.[24]

As set forth in the Declaration of Matthew E. Stubbs, attorneys at Montgomery Jonson (or its predecessor Montgomery, Rennie & Jonson) have performed 440.6 hours of work while the attorneys at Anderson+Wanca have performed 62.3 hours of work to date respectively.[25] Applying the proposed rate of $350/hour would yield a total lodestar figure of $176,015 (502.9 hours x $350/hour) for their combined work. In contingency fee cases involving a risk of non-payment, courts typically apply a lodestar multiplier. In the recent case of *In re Oral Sodium Phosphate Solution-Based Prods. Liab. Action*, Judge Dan Aaron Polster reviewed a survey of recent class actions and noted the "the courts' effective multipliers averaged . . . 3.89 across all

---

[24] *See Barnes v. City of Cincinnati,* 401 F.3d 729, 745 (6th Cir. 2005)("The district court used the current market rate in calculating plaintiff's attorneys' reasonable hourly rate because the litigation had been ongoing for nearly six years.")(*internal citation omitted); Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1051 (9th Cir. Wash. 2002)("Calculating fees at prevailing rates to compensate for delay in receipt of payment was within the district court's discretion.")

[25] Class Counsel have not included work performed by non-attorneys such as paralegals and law clerks. To facilitate this Court's analysis, Class Counsel will submit its detailed billing records to the Court for *in camera* review at the fairness hearing.

1,120 cases [involving] common benefit fee awards entered by state and federal courts."  2010 U.S. Dist. LEXIS 128371, *fn 28.  In light of the $156,250 sought, the lodestar multiplier in this case would be .887.  A lodestar multiplier of less than 1.0 is, in effect, a lodestar reduction instead of a lodestar multiplier and well below the norm.[26]

In short, Class Counsel requests an award of attorney fees in this case based on the percentage-of-fund method.  While the customary percentage is 33% in contingency fee cases, Class Counsel is seeking only 25% of the Settlement Fund in this case, resulting in a requested award of $156,250.  As this amount is less than the attorney fees that would likely result from a lodestar calculation, it is more than justified by a lodestar or lodestar cross-check method.

### 3. *Ramey* Factors

The Sixth Circuit has also suggested six factors ("the *Ramey* factors") to be considered in assessing the attorney fee award in class action cases:

> (1) the value of the benefit achieved for the plaintiff class; (2) the value of the attorneys' services; (3) whether counsel undertook the services on a contingent fee basis; (4) the public's interest in rewarding attorneys who produce such benefits; (5) the complexity of the action; and (6) the professional skill and standing of all counsel involved.[27]

All of these factors support the requested award in this case.

---

[26]    *E.g. Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, *17 (S.D. Ohio 2012)("the 'lodestar multiplier' would be 3.06. This multiplier is very acceptable under the facts and circumstances of this case and especially in light of the extraordinary service rendered by counsel on behalf of the Class."); *Merkner v. AK Steel Corp.*, 2011 U.S. Dist. LEXIS 157375, *18 (S.D. Ohio 2011)("In light of the $9.1 million sought, the "lodestar multiplier" would be 5.3. This multiplier is acceptable under the facts and circumstances of this case."); *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 18838, *7 (S.D. Ohio 2008)("plaintiffs' request for a fees and expense award totaling $3,000,000 contemplates use of a multiplier of 3.04. This multiplier is fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation.")

[27]    *See Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, *8-*9 (S.D. Ohio 2012)(*citing Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516-17 (6th Cir. Mich. 1993).

### i. Benefit Achieved for the Class

The benefit achieved for the Class Members is substantial, particularly for a claim involving unlawful facsimile advertisements. IPC sent thousands of advertisements via facsimile in apparent violation of the TCPA. Absent the efforts of Class Counsel, few, if any, of the recipients would have bothered to file claims or received any remedy from IPC. As a result of this action, all of the Class Members will receive a credit of $100.00 toward the purchase of cohesive bandages from IPC, the product marketed in the IPC Fax. And the Class Members who submitted valid claim forms will receive $100.00 in cash. These benefits were obtained for the Class Members without their incurring any expenses, attorney fees, or the burden and inconvenience of litigation.

### ii. The Value of Counsel's Services

The second *Ramey* factor also favors awarding the requested attorney fees to Class Counsel. The TCPA provides minimal damages and no attorney fees. Predictably, this has resulted in very few individual claims being filed under the TCPA. True to form, no one – not a single recipient – appears to have brought an individual claim against IPC despite a nationwide advertising campaign. Absent a class action – and the efforts of Class Counsel in pursuing IPC and setting the stage for class certification – the Class Members would likely have received no remedy whatsoever.[28] As recently stated by the U.S. District Court for the Western District of Kentucky in another class action, "attorneys who take on class action matters enabling litigants

---

[28] *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007)("In this case, individual damages are small, and class members would be unlikely to litigate claims on their own. In fact, no other claims have been filed based on Omnipak's broadcast facsimile."); *Becton Dickinson & Co.* 2003 Ohio 2826, ¶ 21 ("Civ.R. 23 was designed to give access to the courts . . . in instances where, as in small but numerous consumer grievances, the value of each individual lawsuit would not justify litigation."); *Henes v. Ostrov Corp.* (1986), 30 Ohio App.3d 108, 110; 506 N.E.2d 939, 941 ("The nominal nature of individual claims is an important factor in determining the superiority of a class action over other possible forms of litigation.")

to pool their claims provide a huge service to the judicial process and should be rewarded for their efforts."[29]

In addition, the attorney fee percentage requested by Class Counsel is actually less than the norm of one-third in individual, contingency fee cases.[30]  The fact that Class Counsel enabled a class of persons to recover damages from IPC does not diminish the value of the services provided by Class Counsel and, therefore, should not diminish the percentage of fees they should receive.[31]

### iii.   Counsel Undertook this Action on a Contingency Fee Basis

The third *Ramey* factor also favors awarding the requested attorney fees to Class Counsel. Under the Retainer Agreement, Class Counsel agreed to prosecute this action on the basis of a contingency fee.  As such, neither Montgomery Jonson nor Anderson+Wanca has received any compensation for the work they have performed or the expenses they have incurred.  The risk of non-payment in class action cases such as this is substantial and may be the single most important factor in justifying the attorney fee award.[32]

---

[29]  *In re Skechers Toning Shoe Prods. Liab. Litig*., 2013 U.S. Dist. LEXIS 67441, *42 (W.D. Ky. 2013)

[30]  *See Manners v. American General Life Ins. Co*., 1999 U.S. Dist. LEXIS 22880, *86-*87 (M.D. Tenn. 1999)("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.")(*internal quotations and citation omitted); Blum v. Stenson,* 465 U.S. 886, 905, n* (1984)(Brennan, J., concurring)("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. . . . the fee is directly proportional to the recovery.")

[31]  *In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167. *31 (E.D. Tenn. 2013)(" [T]he Court sees no good reason why class action lawyers who represent clients on a contingency-fee basis in a case such as this should receive lower fees on a percentage basis than do contingency-fee lawyers in litigation representing individual clients, which typically amount to 33% or more of the recovery.")

[32]  *See Manners v. American General Life Ins. Co*., 1999 U.S. Dist. LEXIS 22880, *92 (M.D. Tenn. 1999)("This [matter] was undertaken entirely on a contingent basis with plaintiffs' counsel bearing the full risk of no recovery at all.  The risk of loss in any litigation is quite real. Plaintiffs' counsel's efforts here demonstrates their commitment to obtaining valuable and meaningful relief for the Class.")(*internal citation omitted); In re Skechers Toning Shoe Prods. Liab. Litig.,* 2013 U.S. Dist. LEXIS 67441. *41 (W.D. Ky. 2013)("Each of the plaintiffs' counsel spent considerable time on this action at the risk of receiving no compensation. Therefore, this factor

### iv.     The Public Interest

The fourth *Ramey* factor also favors awarding the requested attorney fees to Class

Counsel.  Class actions such as this are likely the only effective enforcement mechanism of the

ban of facsimile advertising in 47 U.S.C. § 227.  No individual actions appear to have been filed

against IPC despite an advertising campaign that involved thousands of fax advertisements and

spanned dozens of states.  Moreover, neither the Federal Communications Commission nor any

of the State Attorney Generals, the public entities entrusted with enforcing the TCPA, has

brought a suit or any other enforcement action against IPC.  Numerous Sixth Circuit Courts have

noted that "[t]here is a public interest in ensuring that attorneys willing to represent clients in

class action litigation are adequately paid so that they and others like them will continue to take

on such cases.  Adequate compensation is necessary to encourage attorneys to assume the risk of

litigation in the public interest."[33]

Of course, the public is likely less interested in the fees paid to the attorneys than the

utility of the lawsuit itself.   In the *Sketchers* litigation, which also involved unlawful

advertisements, the U.S. District Court for the Western District of Kentucky described the public

interest served by the class action as follows:

> Encouraging qualified counsel to bring inherently difficult and
> risky but beneficial class actions . . . benefits society.  Many of the
> class members in this action would be financially unable to pursue
> the claims asserted on their own accord. Additionally, the fact that
> individual plaintiffs may only receive a small recovery also
> impedes individual efforts. In fact, it appears to the Court that the

---

supports [the] award of attorneys' fees to plaintiffs' counsel.")

[33]      *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829, \*36-\*37 (S.D. Ohio 2011)

> majority of class members would have received nothing in the absence of this settlement.[34]

Intrusive, unsolicited advertising is a nuisance felt by everyone with a cell phone, computer, fax machine, or similar device. The federal statute that largely regulates such conduct, the Telephone Consumer Protection Act, is enforced almost entirely via private, class action suits such as this. Accordingly, the public interest factor also supports the reasonableness of the requested fee award in this matter.

### v. Complexity of the Action

The fifth *Ramey* factor also favors awarding the requested fees. Although the substance of the TCPA is relatively simple, "most class actions are inherently complex."[35] The technical challenges in finding and collecting the data necessary to identify and administer a class with members spread across the nation can be considerable: "this matter was a complex national class action. . . . prosecution and management of a complex national class action requires unique legal skills and abilities."[36] The limited number of attorneys who will undertake such cases also supports the reasonableness of the attorney fees requested in this case.

### vi. Professional Skill and Standing of All Counsel Involved

The sixth *Ramey* also favors awarding the requested attorney fees to Class Counsel. As stated by the Sixth Circuit Court of Appeal, "one of the primary determinants of the quality of

---

[34]  *In re Skechers Toning Shoe Prods. Liab. Litig*., 2013 U.S. Dist. LEXIS 67441, *41 (W.D. Ky. 2013)(*internal quotations and citation omitted); see also Lowther v. AK Steel Corp*., 2012 U.S. Dist. LEXIS 181476, *41 (S.D. Ohio 2012)("Important public policy considerations support the requested attorneys' fees. Private lawsuits, such as this, are essential to effectuate the federal . . . remedial purposes of" of 47 U.S.C. § 227.)

[35]  *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829, *8 (S.D. Ohio 2011)(*internal citation and punctuation omitted)*

[36]  *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).

work performed is the result obtained."[37]   The result obtained in this case in undeniably favorable and beneficial to the Class Members.  Moreover, this action was vigorously contested by very capable lawyers from several large, national law firms.  The quality of opposing counsel and the determination of the opposition are also important factors in assessing the quality of the services rendered by Class Counsel.[38]  Class Counsel's ability to obtain a favorable result for the Class Members despite formidable opposition further demonstrates the quality of the legal services it provided.

One final consideration that does not fit neatly within the *Ramey* factors is the absence of any objections to the request for attorney fees.  The Notice in this case was sent to each of the 6,552 Class Members and informed them that Class Counsel intended to seek attorneys' fees of one-quarter of the Settlement Fund.  The Notice also informed the Class Members that they could object to the amount of attorneys' fees requested. No Class Member has objected to any aspect of the Class Settlement, including the anticipated request for attorney fees.  The lack of objections is strong evidence of the acceptability of the fee request.[39]

---

[37]      *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 517 (6th Cir. Mich. 1993); *see also In re Cardinal Health Inc. Sec. Litigs*., 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007)("The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action")

[38]      *Lowther v. AK Steel Corp*., 2012 U.S. Dist. LEXIS 181476, *11 (S.D. Ohio 2012)("The settlement represents a favorable result for the Class, attributable to the diligence, determination, hard work, and reputation of Plaintiffs' counsel. The action was vigorously contested, and Defendant was represented by highly regarded lawyers. The quality of opposing counsel is important in assessing the quality of the services rendered by Plaintiffs' counsel.")

[39]      *See In re Art Materials Antitrust Litigation*, 1983 U.S. Dist. LEXIS 10434, *12 (N.D. Ohio 1983)("this court considers highly significant the lack of objection to the application [for attorney fees] from over 19,000 potential class members. . . .  the unanimous approval of the fee application is entitled to great weight in this court's evaluation of the application."); *Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992)("The fact that there are no objections to either the Settlement or to petitioners' request for attorney's fees is strong evidence of the propriety and acceptability of that request."); *Rankin v. Rots*, 2006 U.S. Dist. LEXIS 45706, *12 (E.D. Mich. 2006)("there are over 100,000 class members. Out of this number, only four participants filed documents with the Court, two of which can be construed as objections. The class reaction can be described as overwhelmingly supportive.");

## III.  <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff Physicians Healthsource, Inc. respectfully requests that this Court grant an award of attorney fees to Class Counsel in the amount of $156,250.

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC.,
individually and as the representative of a class of
similarly-situated persons

*/s/Matthew E. Stubbs*
George D. Jonson (0027124)
Matthew E. Stubbs (0066722)
MONTGOMERY JONSON, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
Phone:        (513) 241-4722
Fax:           (513) 768-9227
Email:        gjonson@mojolaw.com
                  mstubbs@mojolaw.com


*/s/Brian J. Wanca*
Brian J. Wanca (*pro hac vice*)
Ryan Kelly (*pro hac vice)*
Ross Good (*pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501
bwanca@andersonwanca.com
rgood@andersonwanca.com
rkelly@andersonwanca.com

---

*Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 7829, *16 (S.D. Ohio 2011)("the Court should look to the reaction of the class members. . . . Here, direct mail notice was sent to 378,713 potential Class Members, with additional notice by publication, yet only two written Objections were received.")

## **CERTIFICATE OF SERVICE**

I hereby certify that on, October 21, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ *Matthew E. Stubbs*
Matthew E. Stubbs